(Slip Opinion)          OCTOBER  TERM,  2016          1

Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## DAVILA *v*. DAVIS, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

No. 16–6219.   Argued April 24, 2017—Decided  June 26, 2017

In petitioner's state capital murder trial, the trial court overruled counsel's objection to a proposed jury instruction and submitted the instruction to the jury, which convicted petitioner.  Appellate counsel did not challenge the jury instruction, and petitioner's conviction and sentence were affirmed.  Petitioner's state habeas counsel did not raise the instructional issue or challenge appellate counsel's failure to raise it on appeal, and the state habeas court denied relief.  Petitioner then sought federal habeas relief.  Invoking *Martinez* v. *Ryan*, 566 U. S. 1, and *Trevino* v. *Thaler*, 569 U. S. 413, petitioner argued that his state habeas counsel's ineffective assistance in failing to raise an ineffective-assistance-of-appellate-counsel claim provided cause to excuse the procedural default of that claim.  The District Court denied relief, concluding that *Martinez* and *Trevino* apply exclusively to ineffective-assistance-of-trial-counsel claims.  The Fifth Circuit denied a certificate of appealability.

*Held*: The ineffective assistance of postconviction counsel does not provide cause to excuse the procedural default of ineffective-assistance-of-appellate-counsel claims. Pp. 4–16.

   (a) In *Coleman* v. *Thompson*, 501 U. S. 722, this Court held that attorney error committed in the course of state postconviction proceedings—for which the Constitution does not guarantee the right to counsel—cannot supply cause to excuse a procedural default that occurs in those proceedings.  *Id.*, at 755.  In *Martinez*, the Court announced an "equitable . . . qualification" of *Coleman*'s rule that applies where state law requires a claim of ineffective assistance of trial

counsel to be raised in an "initial-review collateral proceeding," rather than on direct appeal. 566 U. S., at 16, 17. In those situations, "a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if" the default results from the ineffective assistance of the prisoner's counsel in the collateral proceeding. *Id.*, at 17. The Court clarified in *Trevino* that *Martinez*'s exception also applies where the State's "procedural framework, by reason of its design and operation, makes it unlikely in a typical case that a defendant will have a meaningful opportunity to raise" the claim on direct appeal. 569 U. S., at ___. Pp. 4–7.

(b) This Court declines to extend the *Martinez* exception to allow a federal court to hear a substantial, but procedurally defaulted, claim of appellate ineffectiveness when a prisoner's state postconviction counsel provides ineffective assistance by failing to raise it. Pp. 7–16.

(1) *Martinez* itself does not support extending this exception to new categories of procedurally defaulted claims. The *Martinez* Court did not purport to displace *Coleman* as the general rule governing procedural default. Rather, it "qualifie[d] *Coleman* by recognizing a narrow exception," 566 U. S., at 9, and made clear that "[t]he rule of *Coleman* governs in all but th[ose] limited circumstances," *id.*, at 16. Applying *Martinez*'s highly circumscribed, equitable exception to new categories of procedurally defaulted claims would do precisely what this Court disclaimed in that case. P. 7.

(2) *Martinez*'s underlying rationale does not support extending its exception to appellate-ineffectiveness claims. Petitioner argues that his situation is analogous to *Martinez,* where the Court expressed concern that trial-ineffectiveness claims might completely evade review. The Court in *Martinez* made clear, however, that it exercised its equitable discretion in view of the unique importance of protecting a defendant's trial rights, particularly the right to effective assistance of trial counsel. Declining to expand *Martinez* to the appellate-ineffectiveness context does no more than respect that judgment. Nor is petitioner's rule required to ensure that meritorious claims of trial error receive review by at least one state or federal court—*Martinez*'s chief concern. See 566 U. S., at 10, 12. A claim of trial error, preserved by trial counsel but not raised by counsel on appeal, will have been addressed by the trial court. If an unpreserved trial error was so obvious that appellate counsel was constitutionally required to raise it on appeal, then trial counsel likely provided ineffective assistance by failing to raise it at trial. In that circumstance, the prisoner likely could invoke *Martinez* or *Coleman* to obtain review of trial counsel's failure to object. Similarly, if the underlying, defaulted claim of trial error was ineffective assistance of trial counsel premised on something other than the failure to object,

then *Martinez* and *Coleman* again already provide a vehicle for ob-
taining review of that error in most circumstances. Pp. 7–11.

(3) The equitable concerns addressed in *Martinez* do not apply to
appellate-ineffectiveness claims. In *Martinez* and *Trevino*, the States
deliberately chose to make postconviction process the only means for
raising trial-ineffectiveness claims. The Court determined that it
would be inequitable to refuse to hear a defaulted claim when the
State had channeled that claim to a forum where the prisoner might
lack the assistance of counsel in raising it. The States have not made
a similar choice with respect to appellate-ineffectiveness claims—nor
could they, since such claims generally cannot be presented until af-
ter the termination of direct appeal. The fact that appellate-
ineffectiveness claims are considered in proceedings in which counsel
is not constitutionally guaranteed is a function of the nature of the
claim, not of the States' deliberate choices. Pp. 11–12.

(4) The *Martinez* decision was also grounded in part on the belief
that its narrow exception was unlikely to impose significant systemic
costs. See 566 U. S., at 15–16. But adopting petitioner's proposed ex-
tension could flood the federal courts with defaulted appellate-
ineffectiveness claims, and potentially serve as a gateway to federal
review of a host of defaulted claims of trial error. It would also ag-
gravate the harm to federalism that federal habeas review of state
convictions necessarily causes. Not only would these burdens on the
federal courts and federal system be severe, but the systemic benefit
would be small, as claims heard in federal court solely by virtue of
petitioner's proposed rule would likely be largely meritless. Pp. 12–
16.

650 Fed. Appx. 860, affirmed.

THOMAS, J., delivered the opinion of the Court, in which ROBERTS,
C. J., and KENNEDY, ALITO, and GORSUCH, JJ., joined. BREYER, J., filed a
dissenting opinion, in which GINSBURG, SOTOMAYOR, and KAGAN, JJ.,
joined.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

_____

No. 16–6219

_____

## ERICK DANIEL DAVILA, PETITIONER *v.* LORIE DAVIS, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

[June 26, 2017]

JUSTICE THOMAS delivered the opinion of the Court.

Federal habeas courts reviewing convictions from state courts will not consider claims that a state court refused to hear based on an adequate and independent state procedural ground. A state prisoner may be able to overcome this bar, however, if he can establish "cause" to excuse the procedural default and demonstrate that he suffered actual prejudice from the alleged error. An attorney error does not qualify as "cause" to excuse a procedural default unless the error amounted to constitutionally ineffective assistance of counsel. Because a prisoner does not have a constitutional right to counsel in state postconviction proceedings, ineffective assistance in those proceedings does not qualify as cause to excuse a procedural default. See *Coleman* v. *Thompson*, 501 U. S. 722 (1991).

In *Martinez* v. *Ryan*, 566 U. S. 1 (2012), and *Trevino* v. *Thaler*, 569 U. S. 413 (2013), this Court announced a narrow exception to *Coleman*'s general rule. That exception treats ineffective assistance by a prisoner's state

postconviction counsel as cause to overcome the default of a single claim—ineffective assistance of trial counsel—in a single context—where the State effectively requires a defendant to bring that claim in state postconviction proceedings rather than on direct appeal. The question in this case is whether we should extend that exception to allow federal courts to consider a different kind of defaulted claim—ineffective assistance of appellate counsel. We decline to do so.

I

A

On April 6, 2008, a group of family and friends gathered at Annette Stevenson's home to celebrate her granddaughter's birthday. Petitioner Erick Daniel Davila, believing he had seen a member of a rival street gang at the celebration, fired a rifle at the group while they were eating cake and ice cream. He shot and killed Annette and her 5-year-old granddaughter Queshawn, and he wounded three other children and one woman.

After the police arrested petitioner, he confessed to the killings. He stated that he "wasn't aiming at the kids or the woman," but that he was trying to kill Annette's son (and Queshawn's father) Jerry Stevenson and the other "guys on the porch." App. 38. The other "guys on the porch" were, apparently, women.

The State indicted petitioner for capital murder under Tex. Penal Code Ann. §19.03(a)(7)(A) (West 2016), which makes it a capital crime to "murde[r] more than one person . . . during the same criminal transaction." In response to the jury's request for clarification during deliberations, the trial court proposed instructing the jury on transferred intent. Under that doctrine, the jury could find petitioner guilty of murder if it determined that he intended to kill one person but instead killed a different person. Petitioner's counsel objected to the additional

instruction, arguing that the trial judge should "wait" to submit it "until the jury indicates that they can't reach . . . a resolution." App. 51. The trial court overruled the objection and submitted the instruction to the jury. The jury convicted petitioner of capital murder, and the trial court sentenced petitioner to death.

## B

Petitioner appealed his conviction and sentence. Although his appellate counsel argued that the State presented insufficient evidence to show that he acted with the requisite intent, counsel did not challenge the instruction about transferred intent. The Texas Court of Criminal Appeals affirmed petitioner's conviction and sentence. *Davila* v. *State*, 2011 WL 303265 (Jan. 26, 2011), cert. denied, 565 U. S. 885 (2011).

Petitioner next sought habeas relief in Texas state court. His counsel did not challenge the instruction about transferred intent, nor did he challenge the failure of his appellate counsel to raise the alleged instructional error on direct appeal. The Texas Court of Criminal Appeals denied relief. *Ex parte Davila*, 2013 WL 1655549 (Apr. 17, 2013), cert. denied, 571 U. S. \_\_\_ (2013).

## C

Petitioner then sought habeas relief in Federal District Court under 28 U. S. C. §2254. As relevant here, he argued that his appellate counsel provided ineffective assistance by failing to challenge the jury instruction about transferred intent. Petitioner conceded that he had failed to raise his claim of ineffective assistance of appellate counsel in his state habeas petition, but argued that the failure was the result of his state habeas counsel's ineffective assistance. Petitioner invoked this Court's decisions in *Martinez* and *Trevino* to argue that his state habeas attorney's ineffective assistance provided cause to excuse

the procedural default of his claim of ineffective assistance of appellate counsel.

The District Court denied petitioner's §2254 petition. It concluded that *Martinez* and *Trevino* did not supply cause to excuse the procedural default of petitioner's claim of ineffective assistance of *appellate* counsel because those decisions applied exclusively to claims of ineffective assistance of *trial* counsel. See *Davila* v. *Stephens*, 2015 WL 1808689, \*20 (ND Tex., Apr. 21, 2015). The Court of Appeals for the Fifth Circuit denied a certificate of appealability on the same ground. 650 Fed. Appx. 860, 867–868 (2016). Petitioner then sought a writ of certiorari, asking us to reverse the Fifth Circuit on the ground that *Martinez* and *Trevino* should be extended to claims of ineffective assistance of appellate counsel. We granted certiorari, 580 U. S. \_\_\_ (2017), and now affirm.

## II

Our decision in this case is guided by two fundamental tenets of federal review of state convictions. First, a state prisoner must exhaust available state remedies before presenting his claim to a federal habeas court. §2254(b)(1)(A). The exhaustion requirement is designed to avoid the "unseemly" result of a federal court "upset[ting] a state court conviction without" first according the state courts an "opportunity to . . . correct a constitutional violation," *Rose* v. *Lundy*, 455 U. S. 509, 518 (1982) (internal quotation marks omitted).

Second, a federal court may not review federal claims that were procedurally defaulted in state court—that is, claims that the state court denied based on an adequate and independent state procedural rule. *E.g., Beard* v. *Kindler*, 558 U. S. 53, 55 (2009). This is an important "corollary" to the exhaustion requirement. *Dretke* v. *Haley*, 541 U. S. 386, 392 (2004). "Just as in those cases in which a state prisoner fails to exhaust state remedies, a

habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address" the merits of "those claims in the first instance." *Coleman*, 501 U. S., at 731–732.[1] The procedural default doctrine thus advances the same comity, finality, and federalism interests advanced by the exhaustion doctrine. See *McCleskey* v. *Zant*, 499 U. S. 467, 493 (1991).

A state prisoner may overcome the prohibition on reviewing procedurally defaulted claims if he can show "cause" to excuse his failure to comply with the state procedural rule and "actual prejudice resulting from the alleged constitutional violation." *Wainwright* v. *Sykes*, 433 U. S. 72, 84 (1977); *Coleman*, *supra*, at 750. To establish "cause"—the element of the doctrine relevant in this case—the prisoner must "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray* v. *Carrier*, 477 U. S. 478, 488 (1986). A factor is external to the defense if it "cannot fairly be attributed to" the prisoner. *Coleman*, *supra,* at 753.

––––––––

[1] The Fifth Circuit treats unexhausted claims as procedurally defaulted if "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Bagwell* v. *Dretke*, 372 F. 3d 748, 755 (2004) (internal quotation marks omitted); cf. *Coleman*, 501 U. S., at 735, n. Relying on this doctrine, the District Court concluded that petitioner's federal claim was procedurally defaulted (even though a state court had never actually found it procedurally barred) because Texas law would likely bar a Texas court from deciding the claim on the merits if petitioner were to present it in a successive habeas petition. *Davila* v. *Stephens*, 2015 WL 1808689, \*19–\*20 (ND Tex., Apr. 21, 2015) (citing *Davila* v. *Stephens*, 2014 WL 5879879, \*2 (ND Tex., Nov. 10, 2014)); see also *Davila* v. *Stephens*, 2014 WL 6057907, \*2 (ND Tex., Nov. 10, 2014). Petitioner did not seek a certificate of appealability regarding that holding, and neither petitioner nor the State disputes in this Court that the claim was procedurally defaulted. Accordingly, we assume that it was procedurally defaulted for purposes of this case.

It has long been the rule that attorney error is an objective external factor providing cause for excusing a procedural default only if that error amounted to a deprivation of the constitutional right to counsel. See *Edwards* v. *Carpenter*, 529 U. S. 446, 451 (2000). An error amounting to constitutionally ineffective assistance is "imputed to the State" and is therefore external to the prisoner. *Murray*, *supra*, at 488. Attorney error that does not violate the Constitution, however, is attributed to the prisoner "under well-settled principles of agency law." *Coleman*, *supra*, at 754. It follows, then, that in proceedings for which the Constitution does not guarantee the assistance of counsel at all, attorney error cannot provide cause to excuse a default. Thus, in *Coleman*, this Court held that attorney error committed in the course of state postconviction proceedings—for which the Constitution does not guarantee the right to counsel, see *Murray* v. *Giarratano*, 492 U. S. 1 (1989) (plurality opinion)—cannot supply cause to excuse a procedural default that occurs in those proceedings. 501 U. S., at 755.

In *Martinez*, this Court announced a narrow, "equitable . . . qualification" of the rule in *Coleman* that applies where state law requires prisoners to raise claims of ineffective assistance of trial counsel "in an initial-review collateral proceeding," rather than on direct appeal. *Martinez*, 566 U. S., at 16, 17. It held that, in those situations, "a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if" the default results from the ineffective assistance of the prisoner's counsel in the collateral proceeding. *Id.,* at 17. In *Trevino*, the Court clarified that this exception applies both where state law explicitly prohibits prisoners from bringing claims of ineffective assistance of trial counsel on direct appeal and where the State's "procedural framework, by reason of its design and operation, makes it unlikely in a typical case that a defendant will

have a meaningful opportunity to raise" that claim on direct appeal. 569 U. S., at \_\_\_ (slip op., at 14).

## III

Petitioner asks us to extend *Martinez* to allow a federal court to hear a substantial, but procedurally defaulted, claim of ineffective assistance of appellate counsel when a prisoner's state postconviction counsel provides ineffective assistance by failing to raise that claim. We decline to do so.

### A

On its face, *Martinez* provides no support for extending its narrow exception to new categories of procedurally defaulted claims. *Martinez* did not purport to displace *Coleman* as the general rule governing procedural default. Rather, it "qualifie[d] *Coleman* by recognizing a narrow exception" that applies only to claims of "ineffective assistance of counsel at trial" and only when, "under state law," those claims "must be raised in an initial-review collateral proceeding." *Martinez*, *supra*, at 9, 17. And *Trevino* merely clarified that the exception applies whether state law explicitly or effectively forecloses review of the claim on direct appeal. 569 U. S., at \_\_\_ (slip op. at 2, 13). In all but those "limited circumstances," *Martinez* made clear that "[t]he rule of *Coleman* governs." 566 U. S., at 16. Applying *Martinez*'s highly circumscribed, equitable exception to new categories of procedurally defaulted claims would thus do precisely what this Court disclaimed in *Martinez*: Replace the rule of *Coleman* with the exception of *Martinez*.

### B

Petitioner also finds no support in the underlying rationale of *Martinez*. Petitioner's primary argument is that his claim of ineffective assistance of appellate counsel might never be reviewed by any court, state or federal,

without expanding the exception to the rule in *Coleman.*
He argues that this situation is analogous to *Martinez,*
where the Court expressed that same concern about
claims of ineffective assistance of trial counsel. But the
Court in *Martinez* was principally concerned about *trial
errors*—in particular, claims of ineffective assistance of
*trial* counsel. Ineffective assistance of appellate counsel is
not a trial error. Nor is petitioner's rule necessary to
ensure that a meritorious trial error (of any kind) receives
review.

1

Petitioner argues that allowing a claim of ineffective
assistance of appellate counsel to evade review is just as
concerning as allowing a claim of ineffective assistance of
trial counsel to evade review. Brief for Petitioner 12; see
also *id.,* at 18–26. We do not agree.

The criminal trial enjoys pride of place in our criminal
justice system in a way that an appeal from that trial does
not. The Constitution twice guarantees the right to a
criminal trial, see Art. III, §2; Amdt. 6, but does not guar-
antee the right to an appeal at all, *Halbert* v. *Michigan*,
545 U. S. 605, 610 (2005). The trial "is the main event at
which a defendant's rights are to be determined," *McFar-
land* v. *Scott*, 512 U. S. 849, 859 (1994) (internal quotation
marks omitted), "and not simply a tryout on the road to
appellate review," *Freytag* v. *Commissioner*, 501 U. S. 868,
895 (1991) (Scalia, J., concurring in part and concurring in
judgment) (internal quotation marks omitted). And it is
where the stakes for the defendant are highest, not least
because it is where a presumptively innocent defendant is
adjudged guilty, see *Ross* v. *Moffitt*, 417 U. S. 600, 610
(1974); *Wainwright*, 433 U. S., at 90, and where the trial
judge or jury makes factual findings that nearly always
receive deference on appeal and collateral review, see
*Jackson* v. *Virginia*, 443 U. S. 307, 318–319 (1979); see

also *Cavazos* v. *Smith*, 565 U. S. 1, 2 (2011) (*per curiam*) (under deferential standard of review, "judges will sometimes encounter convictions that they believe to be mistaken, but that they must nevertheless uphold").

The Court in *Martinez* made clear that it exercised its equitable discretion in view of the unique importance of protecting a defendant's trial rights, particularly the right to effective assistance of trial counsel. As the Court explained, "the limited nature" of its holding "reflect[ed] the importance of the right to the effective assistance of *trial* counsel," which is "a bedrock principle in our justice system." 566 U. S., at 12, 16 (emphasis added). In declining to expand the *Martinez* exception to the distinct context of ineffective assistance of appellate counsel, we do no more than respect that judgment.

2

Petitioner's rule also is not required to ensure that meritorious claims of trial error receive review by at least one state or federal court—the chief concern identified by this Court in *Martinez*. See *id.*, at 10, 12. *Martinez* was concerned that a claim of trial error—specifically, ineffective assistance of trial counsel—might escape review in a State that required prisoners to bring the claim for the first time in state postconviction proceedings rather than on direct appeal. Because it is difficult to assess a trial attorney's performance until the trial has ended, a trial court ordinarily will not have the opportunity to rule on such a claim. And when the State requires a prisoner to wait until postconviction proceedings to raise the claim, the appellate court on direct appeal also will not have the opportunity to review it. If postconviction counsel then fails to raise the claim, no state court will ever review it. Finally, because attorney error in a state postconviction proceeding does not qualify as cause to excuse procedural default under *Coleman*, no federal court could consider the

claim either.

Claims of ineffective assistance of appellate counsel, however, do not pose the same risk that a trial error—of any kind—will escape review altogether, at least in a way that could be remedied by petitioner's proposed rule. This is true regardless of whether trial counsel preserved the alleged error at trial. If trial counsel preserved the error by properly objecting, then that claim of trial error "will have been addressed by . . . the trial court." *Martinez*, 566 U. S., at 11. A claim of appellate ineffectiveness premised on a preserved trial error thus does not present the same concern that animated the *Martinez* exception because at least "one court" will have considered the claim on the merits. *Ibid.*; see also *Coleman*, 501 U. S., at 755–756.

If trial counsel failed to preserve the error at trial, then petitioner's proposed rule ordinarily would not give the prisoner access to federal review of the error, anyway. Effective appellate counsel should not raise every nonfrivolous argument on appeal, but rather only those arguments most likely to succeed. *Smith* v. *Murray*, 477 U. S. 527, 536 (1986); *Jones* v. *Barnes*, 463 U. S. 745, 751–753 (1983). Declining to raise a claim on appeal, therefore, is not deficient performance unless that claim was plainly stronger than those actually presented to the appellate court. See *Smith* v. *Robbins*, 528 U. S. 259, 288 (2000). In most cases, an unpreserved trial error will not be a plainly stronger ground for appeal than preserved errors. See 2 B. Means, Postconviction Remedies §35:19, p. 627, and n. 16 (2016). Thus, in most instances in which the trial court did not rule on the alleged trial error (because it was not preserved), the prisoner could not make out a substantial claim of ineffective assistance of appellate counsel and therefore could not avail himself of petitioner's expanded *Martinez* exception.

Adopting petitioner's proposed rule would be unnecessary to ensure review of a claim of trial error even when a

prisoner has a legitimate claim of ineffective assistance of appellate counsel based on something other than a preserved trial error. If an unpreserved trial error was so obvious that appellate counsel was constitutionally required to raise it on appeal, then trial counsel likely provided ineffective assistance by failing to object to it in the first instance. In that circumstance, the prisoner likely could invoke *Martinez* or *Coleman* to obtain review of trial counsel's failure to object. Similarly, if the underlying, defaulted claim of trial error was ineffective assistance of trial counsel premised on something other than the failure to object, then *Martinez* and *Coleman* again already provide a vehicle for obtaining review of that error in most circumstances. Petitioner's proposed rule is thus unnecessary for ensuring that trial errors are reviewed by at least one court.

## C

The Court in *Martinez* also was responding to an equitable consideration that is unique to claims of ineffective assistance of trial counsel and accordingly inapplicable to claims of ineffective assistance of appellate counsel. In *Martinez*, the State "deliberately cho[se] to move trial-ineffectiveness claims outside of the direct-appeal process, where counsel is constitutionally guaranteed," into the postconviction review process, where we have never held that the Constitution guarantees a right to counsel. 566 U. S., at 13; *id.,* at 9. By doing so, "the State significantly diminishe[d] prisoners' ability to file such claims." *Id.,* at 13. Similarly, in *Trevino*, the State had chosen a procedural framework pursuant to which collateral review was, "as a practical matter, the onl[y] method for raising an ineffective-assistance-of-trial-counsel claim." 569 U. S., at \_\_\_ (slip op., at 13).

Although this Court acknowledged in *Martinez* that there was nothing inappropriate about the State's choice,

it explained that the choice was "not without consequences
for the State's ability to assert a procedural default" in
subsequent federal habeas proceedings. 566 U. S., at 13.
Specifically, the Court concluded that it would be inequi-
table to refuse to hear a defaulted claim of ineffective
assistance of trial counsel when the State had channeled
that claim to a forum where the prisoner might lack the
assistance of counsel in raising it.

The States have not made a similar choice with respect
to claims of ineffective assistance of appellate counsel—
nor could they. By their very nature, such claims gener-
ally cannot be presented until *after* the termination of direct
appeal. Put another way, they *necessarily* must be heard
in collateral proceedings, where counsel is not constitu-
tionally guaranteed. The fact that claims of appellate
ineffectiveness are considered in proceedings in which
counsel is not constitutionally guaranteed is a function of
the nature of the claim, not of the State's "deliberat[e]
cho[ice] to move . . . claims outside of the direct-appeal
process." *Ibid.* The equitable concerns raised in *Martinez*
therefore do not apply.

D

Finally, the Court in *Martinez* grounded its decision in
part on the belief that its narrow exception was unlikely to
impose significant systemic costs. See *id.,* at 15–16. The
same cannot be said of petitioner's proposed extension.

1

Adopting petitioner's argument could flood the federal
courts with defaulted claims of appellate ineffectiveness.
For one thing, every prisoner in the country could bring
these claims. *Martinez* currently applies only to States
that deliberately choose to channel claims of ineffective
assistance of trial counsel into collateral proceedings. See,
*e.g., Lee* v. *Corsini*, 777 F. 3d 46, 60–61 (CA1 2015) (*Mar-*

*tinez* and *Trevino* do not apply to Massachusetts); *Henness* v. *Bagley*, 766 F. 3d 550, 557 (CA6 2014) (*Martinez* does not apply to Ohio). If we applied *Martinez* to claims of appellate ineffectiveness, however, we would bring every State within *Martinez*'s ambit, because claims of appellate ineffectiveness necessarily must be heard in collateral proceedings. See *supra,* at 12.

Extending *Martinez* to defaulted claims of ineffective assistance of appellate counsel would be especially troublesome because those claims could serve as the gateway to federal review of a host of trial errors, while *Martinez* covers only one trial error (ineffective assistance of trial counsel). If a prisoner can establish ineffective assistance of trial counsel under *Martinez*, he ordinarily is entitled to a new trial. See *United States* v. *Morrison*, 449 U. S. 361, 364–365 (1981); see also *Hagens* v. *State*, 979 S. W. 2d 788, 792 (Tex. App. 1998). But if he cannot, *Martinez* provides no avenue for litigating other defaulted trial errors.[2]

An expanded *Martinez* exception, however, would mean that *any* defaulted trial error could result in a new trial. In *Carpenter*, this Court held that, when a prisoner can show cause to excuse a defaulted claim of ineffective assistance of appellate counsel, he can in turn rely on that claim as cause to litigate an underlying claim of trial error that was defaulted due to appellate counsel's ineffectiveness. 529 U. S., at 453. Expanding *Martinez* as petitioner

——————

[2] The dissent argues that *Martinez* already provides a gateway to the review of underlying trial errors no differently than would petitioner's proposed rule. See *post,* at 7 (opinion of BREYER, J.). That is not so. If a prisoner succeeds on his claim of ineffective assistance of trial counsel under *Martinez*, the federal habeas court would not need to consider any other claim of trial error since the successful claim of trial ineffectiveness—unlike a successful claim of ineffective assistance of appellate counsel—entitles the prisoner to a new trial. See 7 W. LaFave, J. Israel, N. King, & O. Kerr, Criminal Procedure §28.4(d), p. 258, n. 75 (4th ed. 2015).

suggests would thus produce a domino effect: Prisoners could assert their postconviction counsel's inadequacy as cause to excuse the default of their appellate ineffectiveness claims, and use those newly reviewable appellate ineffectiveness claims as cause to excuse the default of their underlying claims of trial error. Petitioner's rule thus could ultimately knock down the procedural barriers to federal habeas review of nearly any defaulted claim of trial error. The scope of that review would exceed anything the *Martinez* Court envisioned when it established its narrow exception to *Coleman*.

Petitioner insists that these concerns are overstated because many of the newly raised claims will be meritless. See Brief for Petitioner 28. But even if that were true, courts would still have to undertake the task of separating the wheat from the chaff. And we are not reassured by petitioner's suggestion that extending *Martinez* would increase only the number of claims in each petition rather than the number of federal habeas petitions themselves. Reply Brief 14. Each additional claim would require the district court to review the prisoner's trial record, appellate briefing, and state postconviction record to determine the claim's viability. This effort could be repeated at each level of federal review. We cannot "assume that these costs would be negligible," *Murray*, 477 U. S., at 487, and we are loath to further "burden . . . scarce federal judicial resources" in this way, *McCleskey*, 499 U. S., at 491.

2

Expanding *Martinez* would not only impose significant costs on the federal courts, but would also aggravate the harm to federalism that federal habeas review necessarily causes. Federal habeas review of state convictions "entails significant costs," *Engle* v. *Isaac*, 456 U. S. 107, 126 (1982), "'and intrudes on state sovereignty to a degree matched by few exercises of federal judicial authority,'"

*Harrington* v. *Richter*, 562 U. S. 86, 103 (2011) (quoting *Harris* v. *Reed*, 489 U. S. 255, 282 (1989) (KENNEDY, J., dissenting)). It "frustrates both the States' sovereign power to punish offenders and their good-faith attempts to honor constitutional rights." *Calderon* v. *Thompson*, 523 U. S. 538, 555–556 (1998) (internal quotation marks omitted). It "degrades the prominence of the [State] trial," *Engle*, *supra*, at 127, and it "disturbs the State's significant interest in repose for concluded litigation [and] denies society the right to punish some admitted offenders," *Harrington*, *supra,* at 103 (internal quotation marks omitted).

Apart from increasing the sheer frequency of federal intrusion into state criminal affairs, petitioner's proposed rule would also undermine the doctrine of procedural default and the values it serves. That doctrine, like the federal habeas statute generally, is designed to ameliorate the injuries to state sovereignty that federal habeas review necessarily inflicts by giving state courts the first opportunity to address challenges to convictions in state court, thereby "promoting comity, finality, and federalism." *Cullen* v. *Pinholster*, 563 U. S. 170, 185 (2011); *McCleskey*, *supra*, at 493. Expanding the narrow exception announced in *Martinez* would unduly aggravate the "special costs on our federal system" that federal habeas review already imposes. *Engle*, *supra*, at 128.

3

Not only would these burdens on the federal courts and our federal system be severe, but the benefit would—as a systemic matter—be small. To be sure, permitting a state prisoner to bring a meritorious constitutional claim that could not otherwise be heard is beneficial to that prisoner. Petitioner's counsel concedes, however, that relief is granted in, "[i]f any, a very minute number" of "post-conviction ineffective assistance of appellate counsel

cases." Tr. of Oral Arg. 14. Indeed, he concedes that the number of meritorious cases is "infinitesimally small." *Ibid.* We think it is likely that the claims heard in federal court because of petitioner's proposed rule would also be largely meritless, given that the proposed rule would generally affect only those cases in which the trial court already adjudicated, and rejected, the prisoner's argument regarding the alleged underlying trial error. See *supra,* at 11. Given that petitioner's proposed rule would likely generate high systemic costs and low systemic benefits, and that the unique concerns of *Martinez* are not implicated in cases like his, we do not think equity requires an expansion of *Martinez.*

\*     \*     \*

For the foregoing reasons, we affirm the judgment of the Court of Appeals.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

————————

No. 16–6219

————————

## ERICK DANIEL DAVILA, PETITIONER *v.* LORIE DAVIS, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

[June 26, 2017]

JUSTICE BREYER, with whom JUSTICE GINSBURG, JUSTICE SOTOMAYOR, and JUSTICE KAGAN join, dissenting.

As the Court explains, normally a federal habeas court cannot hear a state prisoner's claim that his trial lawyer was, constitutionally speaking, "ineffective" if the prisoner failed to assert that claim in state court at the appropriate time, that is, if he procedurally defaulted the claim. See *ante,* at 1 (the prisoner's failure to raise his federal claim at the initial-review state collateral proceeding amounts to an "adequate and independent state procedural ground" for denying habeas relief).

But there are equitable exceptions. In *Martinez* v. *Ryan*, 566 U. S. 1 (2012), and later in *Trevino* v. *Thaler*, 569 U. S. 413 (2013), we held that, despite the presence of a procedural default, a federal court can nonetheless hear a prisoner's claim that his trial counsel was ineffective, where (1) the framework of state procedural law "makes it highly unlikely in a typical case that a defendant will have a meaningful opportunity to raise a claim of ineffective assistance of trial counsel on direct appeal," *id.,* at 429; (2) in the state "'initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective,'" *ibid.* (quoting *Martinez*, 566 U. S., at 17); and (3)

"the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit," *id.,* at 14.

In my view, this same exception (with the same qualifications) should apply when a prisoner raises a constitutional claim of ineffective assistance of appellate counsel. See, *e.g.*, *Evitts* v. *Lucey*, 469 U. S. 387, 396 (1985) (Constitution guarantees a defendant an effective appellate counsel, just as it guarantees a defendant an effective trial counsel).

## I

Two simple examples help make clear why I believe *Martinez* and *Trevino* should govern the outcome of this case.

*Example One: Ineffective assistance of trial counsel.* The prisoner claims that his trial lawyer was ineffective, say, because counsel failed to object to an obviously unfair jury selection, failed to point out that the prosecution had promised numerous benefits to its main witness in return for the witness' testimony, or failed to object to an erroneous jury instruction that made conviction and imposition of the death penalty far more likely. Next suppose the prisoner appeals but, per state law, may not bring his ineffective-assistance claim until collateral review in state court (*i.e.,* state habeas corpus), where the prisoner will have a better opportunity to develop his claim and the attorney will be better able to explain his (perhaps strategic) reasons for his actions at trial. Suppose that, on collateral review, the prisoner fails to bring up his ineffective-assistance claim, perhaps because he is no longer represented by counsel or because his counsel there is ineffective. Under these circumstances, if his ineffective-assistance claim is a "substantial" one, *i.e.,* it has "some merit," then *Martinez* and *Trevino* hold that a federal

court can hear the claim even though the state habeas court did not consider it. See *Trevino*, *supra,* at 429; *Martinez*, *supra,* at 14. The fact that the prisoner had no lawyer in the initial state habeas proceeding (or his lawyer in that proceeding was ineffective) constitutes grounds for excusing the procedural default.

*Example Two: Ineffective assistance of appellate counsel.* Now suppose that a prisoner claims that the trial court made an important error of law, say, improperly instructing the jury, or that the prosecution engaged in misconduct. He believes his lawyer on direct appeal should have raised those errors because they led to his conviction or (as here) a death sentence. The appellate lawyer's failure to do so, the prisoner might claim, amounts to ineffective assistance of appellate counsel. The prisoner cannot make this argument on direct appeal, for the direct appeal is the very proceeding in which he is represented by the lawyer he says was ineffective. Next suppose the prisoner fails to raise his appellate lawyer's ineffectiveness at the initial state habeas proceeding, either because he was not represented by counsel in that proceeding or because his counsel there also was ineffective. When he brings his case to the federal habeas court, the State contends that the prisoner's failure to present his claim during the initial state habeas proceeding constitutes a procedural default that precludes federal review of his claim.

Given *Martinez* and *Trevino*, the prisoner in the first example who complains about his trial counsel can overcome the procedural default but, in the Court's view today, the prisoner in the second example who complains about his appellate counsel cannot. Why should the law treat the second prisoner differently? Why should the Court not apply the rules of *Martinez* and *Trevino* to claims of ineffective assistance of both trial and appellate counsel?

## II

As I have said, the Constitution applies similarly to both prisoners: It guarantees them effective assistance of counsel at both trial and during an initial appeal. See *Strickland* v. *Washington*, 466 U. S. 668, 686 (1984) (trial); *Evitts*, *supra,* at 396 (appeal). Moreover, the reasoning of *Martinez* and *Trevino* applies similarly to both situations.

Four features of the claim of ineffective assistance of trial counsel led the *Martinez* Court to its conclusion. Each equally applies here. First, the Court stressed the importance of the underlying constitutional right to effective assistance of trial counsel, describing it as "a bedrock principle in our justice system." 566 U. S.*,* at 12. Our cases make clear that the constitutional right to effective assistance of appellate counsel is also critically important. The Court wrote in *Douglas* v. *California*, 372 U. S. 353, 357 (1963), that "where the merits of *the one and only appeal* . . . as of right are decided without benefit of counsel, we think an unconstitutional line has been drawn between rich and poor." The Court held in *Evitts* that "[a] first appeal as of right . . . is not adjudicated in accord with due process of law if the appellant does not have the effective assistance of an attorney." 469 U. S., at 396. The Court added that "the promise of *Gideon* [v. *Wainwright*, 372 U. S. 335 (1963),] that a criminal defendant has a right to counsel at trial . . . would be a futile gesture unless it comprehended the right to the effective assistance of counsel" "on appeal." *Id.,* at 397. And we stated in *Martinez* itself that "if the attorney appointed by the State to pursue the direct appeal is ineffective, the prisoner has been denied fair process." 566 U. S., at 11 (citing *Coleman* v. *Thompson*, 501 U. S. 722, 754 (1991); *Evitts*, *supra,* at 396; *Douglas*, *supra,* at 357–358). The fact that, according to Department of Justice statistics, nearly a third of convictions or sentences in capital cases are overturned at some stage of review suggests the practical importance of

the appeal right, particularly in a capital case such as this one. See Dept. of Justice, Bureau of Justice Statistics, Capital Punishment, 2013–Statistical Tables, p. 19, (rev. Dec. 2014) (Table 16); see also Brief for National Association of Criminal Defense Lawyers et al. as *Amici Curiae* 10.

Second, we pointed out in *Martinez* that the "initial" state collateral review proceeding "is the first designated proceeding for a prisoner to raise a claim of ineffective assistance at trial." 566 U. S., at 11. We added that it "is in many ways the equivalent of a prisoner's direct appeal as to the ineffective-assistance claim." *Ibid.* In *Trevino*, we applied *Martinez* despite the theoretical possibility that a prisoner might raise an ineffective-assistance-of-trial-counsel claim on direct appeal. We wrote that the State's procedural system denied prisoners a "meaningful opportunity" to bring ineffective-assistance claims on appeal; in effect, it required them to raise the claim for the first time in state collateral review proceedings. 569 U. S., at 429.

This consideration applies *a fortiori* where the constitutional claim at issue is ineffective assistance of appellate counsel. The prisoner cannot raise that kind of claim in the very appeal in which he claims his counsel was ineffective. See *Ha Van Nguyen* v. *Curry*, 736 F. 3d 1287, 1294–1295 (CA9 2013). It makes no difference that the nature of the claim, rather than the State's express rule, makes that so. See *Trevino, supra,* at 429 (extending *Martinez* where the "state procedural framework, by reason of its design and operation, makes it highly unlikely in a typical case that a defendant will have a meaningful opportunity to raise" the claim on direct appeal); *Trevino, supra,* at 424 (referring to "the *inherent nature* of most ineffective assistance of trial counsel claims" (emphasis added; internal quotation marks omitted)); see also *Martinez*, 566 U. S., at 19–20, n. 1 (Scalia, J., dissenting) (There is no "relevant

difference between cases in which the State *says* that certain claims can only be brought on collateral review and cases in which those claims *by their nature* can only be brought on collateral review").

Third, *Martinez* pointed out that, unless "counsel's errors in an initial-review collateral proceeding . . . establish cause to excuse the procedural default in a federal habeas proceeding, no court will review the prisoner's claims." *Id.,* at 10–11 (majority opinion). The same is true when the prisoner claims ineffective assistance of appellate counsel.

The Court argues to the contrary. It says that at least one court—namely, the trial court—will have considered the underlying legal error. *Ante,* at 11. (If not, perhaps trial counsel was ineffective.) But I believe the Court here misses the point. The prisoner's complaint is about the ineffectiveness of his appellate counsel. That ineffectiveness could consist, for example, in counsel's failure to appeal 10 different erroneous decisions of the trial court. The fact that the trial court made those decisions (assuming they are erroneous) does not help the prisoner. To the contrary, it forms the basis of his ineffectiveness claim. In the absence of a *Martinez*-like rule, the prisoner here (and prisoners in similar cases) would receive no review of their ineffective-assistance claims. Moreover, there will be cases in which no court will consider the underlying trial error, either. Suppose that, during the pendency of the appeal, appellate counsel learns of a *Brady* violation, juror misconduct, judicial bias, or some similar violation whose basis was not known during the trial. See *Brady* v. *Maryland*, 373 U. S. 83 (1963). And suppose appellate counsel fails to pursue the claim in the manner prescribed by state law. Without the exception petitioner here seeks, no court will hear either the appellate-ineffective-assistance claim or the underlying *Brady,* misconduct, or bias claim.

Fourth, the *Martinez* Court believed that its decision

would "not . . . put a significant strain on state resources." 566 U. S., at 15. That is because *Martinez* imposed limiting conditions: It excuses only those defaults that (1) occur at the initial-review collateral proceeding; (2) where prisoner had no counsel, or ineffective counsel, in that proceeding; and (3) where the underlying claim of ineffective assistance is "substantial," *i.e.*, has "some merit." *Id.,* at 14–16. Moreover, as the Court pointed out, because many States provide prisoners with counsel in initial-review collateral proceedings (or at least when the prisoner seems to have a meritorious claim), it is unlikely that prisoners will default substantial ineffective-assistance claims. See *id.,* at 14–15 (providing examples). Finally, there is no evidence before us that *Martinez* has produced a greater-than-expected increase in courts' workload, even though *Martinez* applies, as Texas concedes, "in most States." Tr. of Oral Arg. 38.

It therefore seems unlikely that applying *Martinez* to ineffective-assistance-of-appellate-counsel claims will "put a significant strain on" state or federal resources. As I have said, the same limitations as the Court placed upon the assertion of a *Martinez* claim would apply here. And the Court's fear of triggering federal second-guessing of many, if not all, trial errors is of no greater concern here than it was in *Martinez*, for both trial- and appellate-level ineffectiveness claims "could serve as the gateway to federal review of a host of trial errors." *Ante,* at 13. Given a natural judicial hesitation to second-guess counsels' decisions, it is not surprising that we have no significant evidence of defaulted claims of ineffective assistance with "some merit" flooding the federal courts, either in respect to trial counsel (as in *Martinez*) or in respect to appellate counsel (as here). See *Strickland*, 466 U. S., at 690–691 (To prevail on an ineffective-assistance claim, the defendant must show that his attorney's actions "were outside the wide range of professionally competent assistance,"

rather than strategic decisions to which the court must defer, and that those actions had an "effect on the judgment").

In fact, Texas has supplied some empirical evidence, but that evidence suggests that courts can manage a *Martinez* exception expanded to include claims of ineffective assistance of appellate counsel. Texas says that in the Ninth Circuit, which has applied *Martinez* to ineffective-assistance-of-appellate-counsel claims since late 2013, petitioners have used the expanded version of *Martinez* "in dozens" of federal habeas cases. Brief for Respondent 37. (Texas specifically refers to 10 cases, in only 1 of which the petitioner prevailed. *Ibid.*, n. 13.) During that period, state prisoners filed at least 7,500 federal habeas petitions in the Ninth Circuit. See Ninth Circuit Ann. Rep. 71 (2015) (2,468 cases referred to magistrate judges in 2014; 2,693 in 2015). Hence, Texas' estimate of added workload comes down to an increase of "dozens" of cases out of 7,500 cases in total. That figure represents an increase, but not an increase significant enough to warrant depriving a prisoner of any forum to adjudicate a substantial claim that he was deprived of his constitutional right to effective assistance of appellate counsel.

## III

In my view, the Court's effort to distinguish *Martinez* comes down to the following points: (1) *Martinez* concerned only claims of ineffective trial counsel; (2) *Martinez* involved trial errors that, at least sometimes, would have escaped review, while here at least one court (the trial court) may have reviewed the underlying legal error; (3) *Martinez* involved cases in which the State itself prevented its appellate courts from reviewing the claim of trial counsel's ineffectiveness, whereas here it is the nature of the ineffectiveness claim that prevents the appellate courts from reviewing it; and (4) extending *Martinez* could

flood the federal system with normally meritless claims.

I have explained why I believe the last mentioned empirical prediction does not distinguish *Martinez* and why, in any event, it is unlikely to prove correct. See *supra*, at 7–8. And I have explained why the second and third points do not successfully distinguish *Martinez*. The second fails to focus on the relevant claim: ineffective assistance of counsel. See *supra*, at 6. And it fails to acknowledge that there may be cases in which the trial court will not have considered the legal error underlying the ineffective-assistance claim. *Ibid.* The third has little to do with the matter. It overlooks the fact that there is no "relevant difference" between cases in which the State requires that certain claims be brought only on collateral review and "cases in which those claims *by their nature* can only be brought on collateral review," such as claims of ineffective assistance of appellate counsel. See *supra*, at 5–6 (quoting *Martinez*, 566 U. S., at 19–20, n. 1 (Scalia, J., dissenting)). In both cases, the State's scheme deprives a prisoner from having his substantial constitutional claim heard, through no fault of his own.

As to the first point, the Court is of course right. *Martinez* had to do only with the ineffectiveness of trial counsel. But our cases make clear that due process requires a criminal defendant to have effective assistance of appellate counsel as well. See *supra*, at 4. Indeed, effective trial counsel and appellate counsel are inextricably connected elements of a fair trial.

The basic legal principle that should determine the outcome of this case is the principle that requires courts to treat like cases alike. To put the matter more familiarly, what is sauce for the goose is sauce for the gander. The dissent in *Martinez* wrote that there "is not a dime's worth of difference in principle between [ineffective-assistance-of-trial-counsel] cases and many other cases in which initial state habeas will be the first opportunity for a

particular claim to be raised," including "claims asserting ineffective assistance of appellate counsel."  566 U. S., at 19 (opinion of Scalia, J.).  I agree.

  With respect, I dissent.