NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

AUG 5 2022

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| RICHARD GALVAN MONTIEL, | No. 15-99000 |
| Petitioner-Appellant, | D.C. No. 1:96-cv-05412-LJO-SAB |
| v. | |
| KEVIN CHAPPELL, Warden, San Quentin State Prison, | MEMORANDUM* |
| Respondent-Appellee. | |

Appeal from the United States District Court
for the Eastern District of California
Lawrence J. O'Neill, District Judge, Presiding

Argued and Submitted April 16, 2021
San Francisco, California

Before: W. FLETCHER, HURWITZ, and FRIEDLAND, Circuit Judges.

Richard Galvan Montiel appeals from the district court's denial of his
application for a writ of habeas corpus, in which Montiel challenges his
convictions and capital sentence for the 1979 robbery and murder of Gregorio
Ante. In his habeas application, Montiel argues that he received ineffective
assistance of counsel under *Strickland v. Washington*, 466 U.S. 668 (1984), at both

---

\*  This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

his 1979 guilt-phase and 1986 penalty-phase trials. The district court issued a certificate of appealability ("COA") for certain claims related to his 1986 penalty-phase trial, and we address those claims (and others related to the penalty-phase trial) in an opinion filed concurrently with this memorandum disposition. For the reasons we explain here, we decline to expand the COA to include the other uncertified claims and issues that Montiel advances in his opening brief.

A petitioner seeking a COA "must demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; *or* that the questions are adequate to deserve encouragement to proceed further." *Lambright v. Stewart*, 220 F.3d 1022, 1025 (9th Cir. 2000) (brackets and emphasis in original) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983), *codified by statute as recognized by Slack v. McDaniel*, 529 U.S. 473, 483 (2000)). Montiel's uncertified claims do not meet this standard.[1]

1. Montiel urges us to consider whether his penalty-phase attorney provided ineffective assistance of counsel by failing to file a state habeas petition challenging his 1979 convictions before the 1986 penalty trial. We decline to expand the COA to include this claim. As an initial matter, there is no right to effective assistance of counsel in postconviction proceedings. *See Davila v. Davis*,

---

[1] For the reasons given in the concurrently filed opinion, our review is governed by the highly deferential standard of the Antiterrorism and Effective Death Penalty Act ("AEDPA"). *See* 28 U.S.C. § 2254(d).

137 S. Ct. 2058, 2062 (2017) ("[A] prisoner does not have a constitutional right to counsel in state postconviction proceedings."). Thus, Montiel could not have been deprived of such a right by his attorney's failure to file a state habeas petition before the 1986 penalty trial. Moreover, Montiel cannot show prejudice from the failure to file a state habeas petition before his 1986 penalty trial, because after that trial, he was able to file a petition raising claims about his 1979 guilt-phase counsel's performance that the California Supreme Court considered and denied on the merits. We also reject Montiel's argument that, because his penalty-phase attorney's failure to file a habeas petition was a result of a conflict-of-interest, under *Cuyler v. Sullivan*, 446 U.S. 335 (1980), we must presume prejudice.[2]

2. Montiel also urges us to consider whether his guilt-phase counsel provided ineffective assistance at his 1979 trial by failing to investigate and present evidence that Montiel's gross intoxication with phencyclidine ("PCP") prevented him from harboring the mens rea necessary for robbery and murder. *Strickland*

---

[2] Montiel argues that we must presume prejudice under *Cuyler*, 446 U.S. at 349–50, because his attorney had previously represented his guilt-phase lawyer in two unrelated cases. We disagree. The Supreme Court has limited the *Cuyler* presumption of prejudice in conflict-of-interest cases to conflicts arising from joint or concurrent representation. *See Mickens v. Taylor*, 535 U.S. 162, 175-76 (2002). "We have held that a state court's rejection of a conflict claim not stemming from concurrent representation is neither contrary to, nor an unreasonable application of, established federal law as determined by the United States Supreme Court." *Rowland v. Chappell*, 876 F.3d 1174, 1192 (9th Cir. 2017). Here, there is no evidence that Montiel's penalty-phase attorney was representing his guilt-phase attorney at the time he allegedly should have filed the state habeas petition..

requires that a court "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." 466 U.S. at 689. Although we do not deny that aspects of guilt-phase counsel's performance are troubling, the California Supreme Court could reasonably have concluded that counsel's performance did not fall below *Strickland*'s standard of care.

Montiel's guilt-phase attorney did present a mental state defense and offered expert testimony in support of it. He first attempted to hire forensic psychologist and PCP expert Dr. Steven Lerner to review the possible effects that PCP had on Montiel's behavior on the day of the crimes. Dr. Lerner was not available and recommended that counsel contact Dr. Linder, who testified on Montiel's behalf. Dr. Linder held a doctorate in education and health science, had been involved in PCP research activities, and served as the director of a program to develop guidelines and training for medical and law-enforcement professionals on the recognition and management of acute and chronic PCP intoxication. At trial, the court and the parties agreed that there were almost no qualified experts on the psychopharmacological effects of PCP. The decision to hire Dr. Linder appears justified in light of Dr. Lerner's recommendation, Dr. Linder's reasonable qualifications, and the dearth of other available experts. *Turner v. Calderon*, 281 F.3d 851, 875–76 (9th Cir. 2002) ("The choice of what type of expert to use is one

4

of trial strategy and deserves 'a heavy measure of deference.'" (quoting *Strickland*, 466 U.S. at 691)).

Moreover, the guilt-phase attorney's direct examination of Dr. Linder was not obviously deficient. In a declaration submitted with Montiel's state habeas petition, Dr. Linder explained that Montiel's attorney had failed to provide him with California's criminal jury instructions for the relevant offenses or explain to him the meaning of legal concepts, like specific intent, pertinent to Montiel's mental state. To be sure, counsel's failure in this regard is troubling, but Montiel has not provided authority that the failure to provide legal standards to a mental health expert in preparation for testifying was deficient performance for a capital guilt-phase lawyer in 1979. And, in any event, Dr. Linder did provide opinions that undercut the prosecution expert's conclusions about Montiel's mental state. Although his testimony could have been more definitive, Dr. Linder offered the opinion that Montiel was in a "delusional state" at the time of the crimes; rebutted the prosecution expert's assertions that Montiel showed no signs of PCP-induced psychosis; and noted that PCP's effects were highly unpredictable, such that one seemingly rational act was not strong circumstantial evidence that a user was acting rationally just a short time later.

We therefore cannot say that the California Supreme Court's denial of the claim involved an unreasonable application of clearly established Supreme Court

5

precedent. *See* 28 U.S.C. § 2254(d)(1). We do not think this issue warrants more searching analysis, and we therefore decline to expand the COA to include the claim.[3]

3. Finally, Montiel also attempts to raise a claim under *Atkins v. Virginia*, 536 U.S. 304 (2002), that his intellectual disability precludes his execution, and a claim under *Napue v. Illinois*, 360 U.S. 264 (1959), that the prosecution knowingly presented false testimony from Palacio. The State argues, and Montiel does not dispute, that those issues were not presented to the California Supreme Court and are therefore not exhausted. We agree, and we decline to expand the COA to includes those claims. *See* 28 U.S.C. § 2254(b)(1)(A).

---

[3] We therefore need not address Montiel's arguments that guilt-phase counsel was ineffective for failing to prepare a different psychiatrist, Dr. Paul Cutting, who evaluated Montiel before trial. And, in any event, Montiel did not present Dr. Cutting's declaration to the California Supreme Court, so we may not consider it here. *See Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).