**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-1339
_____

LUIS M. CLARK,
                              Appellant

v.

SUPERINTENDENT RETREAT SCI; ATTORNEY GENERAL DELAWARE
_____

On Appeal from the United States District Court
for the District of Delaware
(D.C. No. 1-19-cv-01976)
Circuit Judge: Honorable Stephanos Bibas*

Submitted Under Third Circuit L.A.R. 34.1(a):
June 28, 2022
_____

Before: JORDAN, PORTER, and PHIPPS,
*Circuit Judges*.

(Filed: July 7, 2022)

_____

OPINION†
_____

---

*The Honorable Stephanos Bibas, United States Circuit Judge of the United States Court of Appeals for the Third Circuit, sitting by designation pursuant to 28 U.S.C. §291(b).

†This disposition is not an opinion of the full Court and, under I.O.P. 5.7, is not binding precedent.

PORTER, *Circuit Judge*.

Luis M. Clark, a state convict, appeals the District Court's denial of his habeas petition. He claims he was unconstitutionally prejudiced by his trial attorney's waiver of a self-defense instruction for a gun possession charge. But Delaware likely does not allow a self-defense instruction for possessory gun crimes that do not include an element of intentional force against another, so Clark was likely never entitled to a self-defense instruction to begin with. *See Lewis v. State*, 144 A.3d 1109, 1117–18 (Del. 2016). Delaware does recognize a choice-of-evils justification instruction for possessory gun crimes, but that defense justifies unlawful conduct only in "a situation occasioned or developed through no fault of the defendant." Del. Code Ann. tit. 11, § 463. Clark testified he approached his victim because he "wanted to fight," so he could have never met Delaware's demanding no-fault standard. App. 334. Because Clark's necessity justifications were likely doomed from the beginning, he suffered no substantial prejudice from his trial attorney's waiver. And regardless, as the District Court explained, the jury rejected Clark's self-defense justification for other criminal charges, so the likelihood it would have acquitted Clark on self-defense for the possessory gun charge was slim. Clark cannot show the substantial prejudice needed to get extraordinary federal habeas relief. We will affirm.

I

A

Clark and his neighbor, Oscar Ventura, got into a fight in a parking lot. The fight broke out after Clark reprimanded Ventura for parking a minivan in a handicapped spot.

It ended with Clark beating Ventura's head with a gun several times, leaving Ventura dazed and bloody as Ventura's three young children watched. At one point, the gun went off, shattering the driver's seat car window. Clark handed the gun to his brother and fled. He was caught hiding under a mattress months later. Ventura, for his part, suffered long-term brain damage.

B

Clark was indicted by a Delaware grand jury and charged with aggravated menacing, second-degree assault, four counts of first-degree reckless endangering, and two different gun possession charges: possession of a firearm during the commission of a felony, and possession of a firearm by a person prohibited ("person-prohibited gun possession"). Del. Code Ann. tit. 11, §§ 602(b), 604, 612, 1447A, 1448. He pleaded not guilty and went to trial.

1

Clark's trial attorney argued that Clark was acting in self-defense. Del. Code Ann. tit. 11, § 464(a). Key to this argument was Clark's testimony that the gun was Ventura's. According to Clark, he was making his way back from the liquor store when Ventura, his neighbor, parked in a handicapped spot. They exchanged heated words. Clark put his beer down and got "ready to get into an altercation." App. 325. He approached Ventura's car from the back because he "kind of wanted to fight." App. 334. That is when, Clark says, Ventura got out of the minivan and started swinging at him with brass knuckles equipped with a taser. Clark got the better of him anyway, and Ventura retreated into the minivan, pulling a gun from under his seat. Clark wrestled Ventura for control of the gun. As they

3

struggled, the gun went off, shattering the driver's seat car window. Clark "used that split second to snatch the gun out of [Ventura's] possession." App. 317. He then beat Ventura's head several times with the gun until he left Ventura "incapacitated" and "covered in blood" on the parking lot before fleeing the scene with the gun and handing it to his brother. App. 317, 328.

Ventura told a different story. According to Ventura, Clark walked up to the van with the gun "out in the open." App. 156. Ventura then got out of the car with his brass-knuckles "swinging for the fences." App. 162. But Clark fought back and beat him over the head with the gun "six or eight times." App. 162. The gun went off, and Clark fled the scene.

Neither account was backed by compelling corroborating evidence. One witness, a woman who alerted the police, saw Clark holding the gun and Ventura's neck after the gun had fired. Another witness corroborated Clark's account. But the witness had a glaring credibility problem: he lived with Clark's mother, with whom he was close friends, and he never volunteered his story to police. A DNA analysis of the gun was mixed. Ventura's DNA was all over the gun, including the magazine. Clark's DNA was not detected in the magazine, but the DNA results for the grip and trigger were inconclusive.

Whether Clark started with the gun, or not, remains a mystery. A reasonable jury could have concluded either way. But we do know one thing from trial. Clark approached the minivan looking to fight and then beat Ventura senseless with a gun. Clark said so.

During the prayer conference, the judge discussed the jury instructions with Clark's trial attorney and the prosecutor. The draft jury instruction included a self-defense instruction for all charges except the gun possession charges. Clark's trial attorney wanted the self-defense instruction extended to the gun possession charges too.

The judge was unsure. He thought extending self-defense to those crimes would be "a stretch" and was unsure it would make a difference. App. 260. The prosecutor chimed in, explaining that self-defense could make no difference for the felony gun possession charge. Clark could be found guilty of felony gun possession only if he was convicted of the predicate felony—second-degree assault. If the jury found Clark was acting in self-defense, they would acquit him of second-degree assault, and "[o]nce the assault second goes, the firearm charge goes." App. 261. Clark's trial attorney agreed.

The person-prohibited gun possession charge was different. Conviction did not depend on any predicate felony charge like assault. But the prosecutor suggested he would likely drop the charge if it were severed and the jury acquitted Clark of all other crimes. The judge did not want to overcomplicate things for the jury. He offered the parties a deal: leave the jury instructions as is, and if Clark is "acquitted on everything but convicted on" the person-prohibited gun possession charge, he "would favorably entertain a motion for judgment of acquittal." App. 262. Both attorneys agreed.

The jury deliberated and came back with a verdict. It was a mixed bag. The jury found Clark guilty of second-degree assault, both gun possession charges, and one count

of recklessly endangering Ventura. But the jury acquitted Clark of aggravated menacing and recklessly endangering Ventura's children. Clark was sentenced to forty-six years, including twenty-five years for felony gun possession and eight years for person-prohibited gun possession.

Clark appealed to the Delaware Supreme Court and lost.

C

1

Clark sought post-conviction relief in state court. Clark's court-appointed lawyer argued that Clark's trial counsel was constitutionally ineffective for failing to request a choice-of-evils instruction for the person-prohibited gun possession charge. Del. Code Ann. tit. 11, § 463. Clark's "central point" during state post-conviction proceedings was that person-prohibited gun possession was "a possessory status offense that was suitable for a choice of evils instruction rather than a self-defense instruction." App. 468. He argued that "the self-defense instruction" had "nothing at all to do with" whether a choice-of-evils instruction should have been given. App. 468. But Clark's trial attorney filed an affidavit asserting that he made a strategic choice: given that the judge had promised to favorably entertain an acquittal motion if Clark was acquitted of the other criminal charges due to self-defense, he strategically decided against pressing for a justification instruction on the person-prohibited gun possession charge.

The Superior Court rejected Clark's post-conviction ineffective-assistance claim. *State v. Clark*, 2018 WL 1578164, at *4 (Del. Super. Ct. Mar. 26, 2018). The court saw no prejudice because "the jury certainly would not have found that [Clark] was forced to

take the gun because of 'a situation that developed through no fault' of his own," as would be necessary to succeed on a choice-of-evils defense. *Id.* (referencing Del. Code Ann. tit. 11, § 463). The Supreme Court of Delaware affirmed "for the reasons assigned by the Superior Court in its well-reasoned opinion." *Clark v. State*, 195 A.3d 480, 2018 WL 4846538, at *2 (Del. Oct. 3, 2018) (unpublished table decision).

2

Clark filed a timely habeas petition in federal court, pro se. The petition raised two grounds for relief. First, Clark argued that the trial judge's refusal to give a self-defense instruction for the person-prohibited gun possession charge violated due process. Second, Clark argued that his trial counsel was ineffective by failing to seek a self-defense or justification instruction for the person-prohibited gun possession charge.

The District Court denied his habeas petition. *Clark v. Superintendent*, No. 19-CV-1976-SB, 2021 WL 254103, at *4 (D. Del. Jan. 26, 2021). The District Court held that (1) Clark waived his due process claim during trial; (2) his trial attorney was effective; and (3) Clark was not prejudiced by his trial counsel's waiver of the self-defense instruction. *Id.* at *2–4.

The District Court granted a certificate of appealability, and Clark filed a timely appeal.[‡]

---

[‡] The University of Virginia School of Law Appellate Litigation Clinic ably represented Clark on appeal.

## II

The District Court had jurisdiction under 28 U.S.C. § 2254. We have jurisdiction under 28 U.S.C. § 1291 and 2253. The petition was timely filed under 28 U.S.C. § 2255(f). "Because the District Court did not hold an evidentiary hearing and relied on the state court record, we exercise plenary review." *Robinson v. Beard*, 762 F.3d 316, 323 (3d Cir. 2014). When reviewing a state conviction, we keep in mind that "undoing a final state-court judgment is an extraordinary remedy, reserved for only extreme malfunctions in the state criminal justice system and different in kind from providing relief on direct appeal." *Brown v. Davenport*, 142 S. Ct. 1510, 1523–24 (2022) (quotation marks omitted).

## III

### A

Clark's petition claimed his right to a fair trial was abridged by the trial court's refusal to give a self-defense or justification jury instruction for the person-prohibited gun possession charge. But "Clark is not pursuing a due process claim in this Court." Reply Br. 5. So he has waived his due process claim. *See United States v. Olano*, 507 U.S. 725, 733 (1993).

Clark's waiver is well taken, as Clark's due process claim would stumble on multiple procedural obstacles. As the District Court noted, Clark waived the self-defense instruction during the prayer conference. *Clark*, 2021 WL 254103, at *2. Clark also failed to raise an instructional error in his direct appeal. The Supreme Court of Delaware accordingly held that the "issue is procedurally barred by Superior Court Criminal Rule

8

61(i)(3) because Clark failed to raise that claim on direct appeal." *Clark*, 195 A.3d 480, 2018 WL 4846538, at *2. It also noted that "Clark asserts no cause or prejudice to overcome this procedural default." *Id.* So, Clark's due process claim was procedurally defaulted on direct appeal from his criminal conviction. Clark's only asserted cause for default is that it was his appellate lawyer's fault. But Clark represented himself pro se on appeal, and in any event, ineffective assistance of appellate counsel would not excuse his procedural default. *See Davila v. Davis*, 137 S. Ct. 2058, 2063 (2017). Clark cannot overcome these procedural hurdles, so he is right to waive his claim.

B

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. The Supreme Court has held that the right to counsel includes "the right to the effective assistance of counsel." *Strickland v. Washington*, 466 U.S. 668, 686 (1984) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970)). "Under *Strickland*, a defendant who claims ineffective assistance of counsel must prove (1) 'that counsel's representation fell below an objective standard of reasonableness,' and (2) that any such deficiency was 'prejudicial to the defense.'" *Garza v. Idaho*, 139 S. Ct. 738, 744 (2019) (quoting *Strickland*, 466 U.S. at 687–88, 692).

A trial counsel's negligent error is prejudicial when "it is 'reasonably likely' the result would have been different" without the error. *Harrington v. Richter*, 562 U.S. 86, 111 (2011) (quoting *Strickland*, 466 U.S. at 696). While this is less than a more-probable-than-not standard, "the difference between *Strickland*'s prejudice standard and a more-

9

probable-than-not standard is slight and matters only in the rarest case. The likelihood of a different result must be substantial, not just conceivable." *Id.* at 112 (quotation marks and citations omitted). We are not reviewing prejudice from scratch, though. Delaware's state courts adjudicated Clark's *Strickland* prejudice claim "on the merits." 28 U.S.C. § 2254(d). That means we may not grant relief "so long as fairminded jurists could disagree on the correctness of" the Supreme Court of Delaware's application of *Strickland* prejudice to the facts. *Harrington*, 562 U.S. at 101 (quotation marks and citation omitted).

Clark has failed to show substantial prejudice, so his ineffective-assistance claim fails. For one, a self-defense instruction on the gun possession charge would do nothing for Clark's case if the jury believed Ventura's testimony that Clark started with the gun. Delaware courts observed that the jury appeared to accept the prosecution's argument that Clark approached Ventura "with a gun in his hand." *Clark*, 2018 WL 1578164, at *4; *see also Clark*, 195 A.3d 480, 2018 WL 4846538, at *2 (agreeing with the Superior Court that "the jury rejected Clark's claim that he acted in self-defense, as evidenced by its verdict"). Accordingly, Delaware state courts held that the trial attorney's waiver of a justification instruction on the gun possession charges was not prejudicial.

Clark has a different interpretation of the verdict. He interprets the jury's acquittal on the menacing count as evidence that the jury believed Ventura started with the gun. That interpretation is conceivable, but the Delaware courts' contrary finding is not based on "an unreasonable determination of the facts." *Harrington*, 562 U.S. at 100. The jury could have acquitted Clark on the menacing charge even if they believed Clark started

10

with the gun. The jury could have concluded, for example, that Clark did not display the gun to "intentionally" place Ventura "in fear of imminent physical injury." Del. Code Ann. tit. 11, § 602(b). Clark, after all, approached Ventura's minivan from the back, and Ventura says he noticed the gun only seconds before the physical altercation broke out, suggesting it was not Clark's "conscious objective or purpose" to menacingly display the gun. App. 346. Because the menacing acquittal does not necessarily mean the jury thought Clark started with the gun, we cannot say the Delaware courts' contrary interpretation of the verdict was unreasonable.

Furthermore, a self-defense justification for the person-prohibited gun charge was probably doomed from the start under state law. Self-defense justifies "[t]he use of force upon or toward another person." Del. Code Ann. tit. 11, § 464(a). Possessory crimes like person-prohibited gun possession do not require the use of force against another person, so Delaware law likely precludes a self-defense justification for such possessory crimes. In an analogous case, the Supreme Court of Delaware held that a self-defense instruction was unavailable as a matter of law for a person charged with a similar crime of "possession of a firearm by a person prohibited—negligently causing death." *Lewis v. State*, 144 A.3d 1109, 1117 (Del. 2016). Since the criminal actions of the defendant in that case did not involve "the intentional resort to force" against another, the court reasoned that a self-defense justification would "make no sense." *Id.* at 1117–18. During state post-conviction proceedings, Clark echoed that understanding of state law, arguing that possession of a firearm by a person prohibited is "a possessory status offense that was suitable for a choice of evils instruction rather than a self-defense instruction."

11

App. 468.§ Clark's person-prohibited charge did not require negligently causing injury or death, let alone using intentional force against another person, so Clark was probably never entitled to a self-defense instruction. To be clear, the Supreme Court of Delaware has not yet said as much, and we do not need to forecast its precise view on the matter. What matters here is that by waiving a self-defense instruction Clark might have never gotten in exchange for favorable judicial consideration later, Clark's trial lawyer got a valuable promise in return for little or nothing. That is shrewd lawyering, not ineffective and prejudicial lawyering.

A choice-of-evils instruction could be required in some circumstances for possessory crimes. But not here. Choice of evils is a demanding justification under Delaware law. Del. Code Ann. tit. 11, § 463. It justifies conduct only "when it is necessary as an emergency measure to avoid an imminent public or private injury which is about to occur by reason of a situation occasioned or developed through no fault of the defendant." *Id.* In this case, Clark approached Ventura because he "kind of wanted to fight." App. 334. Given that Clark walked up the van wanting to fight, a no-fault defense instruction would be difficult to justify, perhaps even unreasonable. We accordingly conclude that the Supreme Court of Delaware did not exceed the bounds of fairminded jurisprudence when it found no *Strickland* prejudice on this record, so we must deny federal habeas relief.

---

§ For that reason, Clark forfeited his current ineffective-assistance claim relating to self-defense. But because his claim lacks merit, we need not consider this procedural default. 28 U.S.C. § 2254(b)(2).

C

For the first time on appeal, Clark also argues he was entitled to a self-defense justification instruction for possession of a firearm during the commission of a felony. Clark never raised this claim during the state post-conviction proceedings or in his federal habeas petition, so his claim is procedurally defaulted and forfeited. Even if Clark could surmount these procedural obstacles, Clark got a self-defense instruction for the second-degree assault predicate offense. That was all Clark was likely entitled to get under Delaware law. The jury rejected Clark's self-defense argument, either because Clark savagely beat Ventura over the head more times than the jury thought necessary and reasonable under the circumstances, or because Clark started with the gun, or both. So Clark also fails to show substantial prejudice justifying extraordinary post-conviction relief.

\*      \*      \*

Clark had a fair trial, and he was ably represented. We will affirm the District Court's denial of Clark's petition.