NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0155n.06

Case No. 22-1135

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| MARCUS KELLEY, | ) | **FILED** |
| Plaintiff - Appellee, | ) | Apr 03, 2023 |
| | ) | DEBORAH S. HUNT, Clerk |
| v. | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| DEWAYNE BURTON, Warden, | ) | EASTERN DISTRICT OF MICHIGAN |
| Defendant - Appellant. | ) | |
| | ) | OPINION |
| | ) | |

Before: COLE, GIBBONS, and READLER, Circuit Judges.

GIBBONS, J., delivered the opinion of the court in which READLER, J., joined. COLE, J. (pp. 12–24), delivered a separate dissenting opinion.

JULIA SMITH GIBBONS, Circuit Judge. The warden appeals the district court's grant of Marcus Kelley's amended habeas petition based on his *Brady* claim. Because Kelley's *Brady* claim was unexhausted before the Michigan courts and is thus procedurally defaulted, his claim fails. Kelley's *Brady* claim further fails on the merits because he was not prejudiced by the alleged withholding of impeachment evidence. We reverse the district court's grant of Kelley's habeas petition and remand for consideration of Kelley's remaining claims for relief.

I.

Marcus Kelley was convicted by a Michigan state court jury of multiple drug offenses related to the trafficking of crack cocaine. *People v. Kelley*, No. 310325, 2013 WL 5763056, at *1 (Mich. Ct. App. Oct. 24, 2013) (per curiam). As summarized by the state court of appeals, two relevant witnesses appeared for the prosecution: police informant Michael Zion and Oakland

County Sheriff's Office Detective Mark Ferguson. Zion testified that he purchased crack cocaine from Kelley on four occasions. He identified Kelley as the seller by recognizing Kelley's voice on the phone each time a purchase was arranged and by personally witnessing Kelley hand him bags of what was later verified as crack cocaine. Zion testified that he also observed Kelley "cooking" cocaine in Kelley's kitchen to convert it from powder to crystal and then weighing and packaging the drugs.

Detective Ferguson also testified against Kelley. He identified Kelley as the driver and sole occupant of the car in which the first drug purchase was made and claimed that he had listened to every drug transaction via a recording device that Zion carried. Ferguson identified the voice on the recording as Kelley's and stated "that he heard nothing that sounded like 'anything other than a drug deal.'" *Id.* Kelley was found guilty, and his conviction was affirmed on direct appeal. *Id.* at *8, *appeal denied*, 843 N.W.2d 516 (Mich. 2014), *recons. denied*, 852 N.W.2d 160 (Mich. 2014).

Kelley moved for post-conviction relief from the state trial court. His motion asserted that he was entitled to a new trial under state law based on newly discovered evidence that Ferguson had previously committed misconduct in other cases by submitting false evidence and committing perjury.[1] He alleged that Ferguson's prior misconduct resulted in Ferguson's termination and the dismissal of many other cases. Kelley also argued that his due process rights were violated when the prosecutor knowingly used perjured testimony at his trial by putting Ferguson on the stand—although he did not identify any specific trial testimony that was false. In making this same argument, Kelley also noted that the failure of Ferguson to admit on the record that a search warrant

---

[1] The warden indicates that Ferguson's misconduct was not known to the prosecutor at the time of Kelley's trial. Kelley never specifically states otherwise but says that Ferguson's "misconduct occurred during the period of Petitioner Kelley's case." CA6 R. 13, Appellee Br., at 12.

was obtained improperly prevented the jury from making a proper credibility determination of Ferguson.[2]  Finally, he claimed that he received ineffective assistance of appellate counsel by failing to raise concerns about Ferguson's misconduct on direct appeal.

The state circuit court rejected Kelley's motion for relief from judgment, addressing only the issue of ineffective assistance of appellate counsel.  The court concluded that it could not excuse procedural default of the perjured-testimony claim because Kelley had not shown that he was prejudiced by counsel's errors in failing to raise it on direct appeal.  Kelley sought reconsideration and appealed, asserting his right to relief for the prosecutor's alleged use of perjured testimony to obtain his conviction.  In these appeals, Kelley also stated that a new trial was required for the jury to hear the newly discovered impeachment evidence against Ferguson. The trial court denied reconsideration, and each state appeals court denied Kelley leave to appeal.

On April 11, 2018, Kelley petitioned the Eastern District of Michigan for federal habeas relief pursuant to 28 U.S.C. § 2254.  The district court granted the petition for Count Four—his due process claim that his rights were violated by the prosecutor's use of perjured testimony— finding that the prosecutor or police had violated *Brady v. Maryland*, 373 U.S. 83, 87 (1962), and *Giglio v. United States*, 405 U.S. 150, 153 (1972), by failing to disclose Ferguson's misconduct in other cases.  On appeal, a panel of this court reversed, concluding that the district court erred by recasting the perjured-testimony claim as a *Brady* claim that the prosecutor or police did not disclose Ferguson's credibility issues.  *Kelley v. Burton*, 792 F. App'x 396, 397 (6th Cir. 2020).

On remand, the case was reopened and the district court ordered supplemental briefing. Construing Kelley's briefing as a motion to amend the habeas petition to add the *Brady* claim, the court granted the motion.  Although the warden objected that this amendment was not brought

---

[2] The record contains no indication that the search warrant was in fact improperly obtained.

within the Antiterrorism and Effective Death Penalty Act's ("AEDPA's") one-year statute of limitations for habeas petitions, the court held that the *Brady* claim related back to the original petition because the core facts were the same as Kelley's perjured-testimony claim. Therefore, the court concluded that the amended petition did not exceed AEDPA's statute of limitations.

In addition to its statute of limitations challenge, the warden also argued that Kelley never presented his *Brady* claim to the state courts and therefore did not properly exhaust that claim, barring the district court from granting relief on those grounds. However, the district court concluded that Kelley adequately presented both the legal and factual bases for his *Brady* claim by discussing the key facts pertinent to a *Brady* claim as well as adjacent caselaw, including predecessor cases to *Brady*. It thus concluded that Kelley's *Brady* claim was properly exhausted.

Finding the *Brady* claim properly pled and exhausted, the district court addressed the standard of review for a merits determination. It reasoned that, even if the state trial court had addressed the *Brady/Giglio* claim on the merits, thus entitling the decision to AEDPA deference, its rejection of this claim was "contrary to, or an unreasonable application of, clearly established law and an unreasonable determination of the facts." DE 26, Op. and Order, Page ID 1449.

Next, the district court addressed the state court's determination that Kelley had failed to show prejudice in his ineffective assistance of appellate counsel claim to excuse his failure to raise the *Brady/Giglio* issue on direct appeal. In contrast to the state court, the district court found that Kelley's appellate counsel was ineffective for failing to raise the claim on direct appeal and concluded that Kelley had shown good cause for any procedural default and actual prejudice.

Finally, the district court turned to its review of Kelley's *Brady* claim. It assessed the key factors of a *Brady* claim and held that the information about Ferguson's misconduct was impeaching, that it was suppressed by the officer's failure to disclose it, and that its suppression

prejudiced Kelley by undermining confidence in the verdict. The court granted Kelley's habeas petition, and the warden timely appealed. The court further granted the warden's motion to stay pending appeal.

## II.

"In a habeas corpus appeal, we review the district court's legal conclusion's de novo, but will not set aside its factual findings unless they are clearly erroneous." *Ivory v. Jackson*, 509 F.3d 284, 291 (6th Cir. 2007) (citing *Dyer v. Bowlen*, 465 F.3d 280, 283-84 (6th Cir. 2006)). Whether a claim is barred by a statute of limitations is a question of law subject to de novo review. *Sierra Club v. Slater*, 120 F.3d 623, 630 (6th Cir. 1997). We also review de novo the district court's determinations of cause and prejudice to excuse procedural default. *Id.*

By contrast, we review state court habeas determinations under the standard set out by AEDPA. *Id.*; 28 U.S.C. § 2254(d). Under AEDPA, federal courts may only grant habeas relief to a petitioner in state custody if either: (1) the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court[,]" or (2) the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

When reviewing the district court's grant of a motion to amend, we review for abuse of discretion. *Hill v. Mitchell*, 842 F.3d 910, 922 (6th Cir. 2016).

## III.

In its review of Kelley's petition on remand, the district court committed several errors, any one of which could be the basis for reversal. We hold that, regardless of whether Kelley's

amended habeas petition fell outside AEDPA's statute of limitations,[3] Kelley's *Brady* claim was unexhausted and procedurally defaulted. Furthermore, his claim does not meet *Brady*'s materiality standard on the merits. On these grounds, we reverse.

A.

A state prisoner's federal habeas petition cannot be granted unless he has exhausted his claims before the state courts. 28 U.S.C. § 2254(b)(1); *see also O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) ("In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."). To properly exhaust claims, a state prisoner is required to present "the same claim under the same theory . . . to the state courts before raising it in a federal habeas petition." *See Wagner v. Smith*, 581 F.3d 410, 417 (6th Cir. 2009).

Kelley's motions for state post-conviction relief were centrally premised on the argument that the prosecutor's "knowing use of perjured testimony" violated his due process rights. DE 5-9, Mot. for Relief from J., Page ID 891; *see also* DE 5-12, Mot. for Recons., Page ID 1037-38, 1044-46; DE 5-14, Mich. Ct. App. R., Page ID 1137. Kelley referenced the jury's need to know about a witness's credibility, but only in the context of "the prosecution's duty to prevent lies from entering the evidence." DE 5-9, Mot. for Relief from J., Page ID 891 (citing *People v. Cassell*, 234 N.W.2d 460, 462 (Mich. Ct. App. 1975)). Two assertions constitute Kelley's closest argument to a *Brady* claim: (1) "A Defendant should be entitled to a new trial when the Defendant's conviction is predicated on the testimony of a key witness linking the Defendant to the alleged

---

[3] The statute of limitations does not present a jurisdictional bar to habeas review, and we decline to determine the issue because Kelley is not entitled to habeas relief for the reasons discussed below. *See Smith v. Ohio Dep't of Rehab. and Corr.*, 463 F.3d 426, 429, n.2 (6th Cir. 2006) (declining to address statute-of-limitations defense on appeal in part because AEDPA's statute of limitations is not jurisdictional); *see also Trussell v. Bowersox*, 447 F.3d 588, 590 (8th Cir. 2006).

crime when the newly discovered impeachment evidence casts doubt on the credibility of that key witness," *id.* at Page ID 892, and that (2) "[t]his newly discovered evidence came to light only when Mr. Kelley sent his court-appointed lawyer documentation that Det. Ferguson had been investigated and fired . . . which revealed that he may have testified falsely against Mr. Kelley." DE 5-14, Mich. Ct. App. R., Page ID 1137.  However, Kelley still never asserted that the evidence was withheld, stating rather that he is entitled to a new trial under state law and that the prosecutor violated due process by presenting Ferguson's false testimony in Kelley's trial.  DE 5-9, Mot. for Relief from J., Page ID 890-93.  The claims presented by Kelley to the Michigan state courts simply do not contain a *Brady* claim that evidence was withheld.[4]

In *Jalowiec v. Bradshaw*, 657 F.3d 293 (6th Cir. 2011), the petitioner faced a similar situation to Kelley: in state court, he claimed that the prosecutor suborned perjured testimony and that he had received ineffective assistance of counsel for lack of pre-trial investigation into the prosecution witnesses, but in his federal habeas petition, he sought to advance a *Brady* claim based on the same prior statements of prosecution witnesses.  *Id.* at 304.  We held that the similarity of

---

[4] The dissent, however, argues that Kelley presented both the factual and legal bases for his *Brady* claim to the Michigan courts and thus exhausted his claim.  *See* Dissent at 18-20.  The dissent emphasizes Kelley's citations to *United States v. Agurs*, 427 U.S. 97 (1976) and other *Brady* precursors in his motions for relief.  However, all of these cases were cited by Kelley in the context of a perjured-testimony claim.  *See* Mot. for Relief from J., R. 5-9, Page ID 890-91.  Although Kelley later quotes *Agurs* to reference "omitted evidence," he never states that the evidence was withheld; indeed, this quote from *Agurs* comes in his discussion of whether the evidence is "newly discovered."  *Id.* at Page ID 893.  Throughout hundreds of pages of filings before the Michigan courts, Kelley did not once claim that Ferguson's misconduct evidence was withheld or suppressed; rather, Kelley claimed continuously that Ferguson lied on the stand.  These two distinct claims—perjured-testimony and *Brady*-withholding—are not and cannot be treated the same for purposes of exhaustion, as we explained in *Jalowiec* and as we reiterate below.  It is not our role, as it was not the role of the district court, to recast petitioners' claims to clear procedural hurdles.

the claims was not enough to exhaust Jalowiec's *Brady* claim. The theories of ineffective assistance and perjured-testimony failed to

> give the state courts the opportunity to apply the legal principles governing Jalowiec's present *Brady* claim. It is not enough that these different claims implicated some of the same facts . . . . It is not enough that the claims actually presented to the state courts were somewhat similar to the *Brady* claim in some respects. Nor is it enough to say that the *Brady* ramifications of Jalowiec's arguments were self-evident. The bottom line is that the state courts were not called upon to apply the legal principles governing the constitutional claim now presented to the federal courts.

*Id.* (internal citations and quotation marks omitted). *Jalowiec*'s reasoning applies in full to Kelley's petition. Therefore, we conclude that Kelley has not exhausted his *Brady* claim before the Michigan courts.

As Michigan law permits only one post-conviction motion for relief from judgment, Kelley can no longer present his *Brady* claim to the Michigan courts. *See* Mich. Ct. R. 6.502(B). While there are exceptions to this rule—for a retroactive change in law, new evidence discovered after the filing of the first motion, or a court order vacating the defendant's convictions—none are applicable in Kelley's case. *See* Mich. Ct. R. 6.502(G). Because "is it clear that [the] claim[] [is] now procedurally barred under [state] law," the claim is procedurally defaulted. *Gray v. Netherland*, 518 U.S. 152, 161-62 (1996) (citing *Castille v. Peoples*, 489 U.S. 346, 351 (1989)). This default bars federal review of the claim unless Kelley can show cause and prejudice for the default, *see id.* at 162, or that failure to consider the claim would result in a "fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991).

Importantly, this case involves two layers of procedural default: Kelley's failure to raise his *Brady* claim on direct appeal and his failure to raise the *Brady* claim in his state post-conviction motion for relief. The foregoing discussion has concerned both stages—whether Kelley raised the *Brady* claim at all before the state courts. However, the district court, concluding that Kelley had

exhausted his *Brady* claim in state court in his post-conviction process, addressed only the former. For direct appeal, Michigan has the same "cause and prejudice" standard for excusing procedural default. Mich. Ct. R. 6.508(D)(3). Therefore, the district court considered whether Kelley's failure to raise the *Brady* claim on direct appeal could be excused under that standard. The district court concluded that Kelley had received ineffective assistance of counsel on direct appeal for failing to raise the *Brady* claim.

"[A]ttorney error committed in the course of state postconviction proceedings—for which the Constitution does not guarantee the right to counsel . . . –cannot supply cause to excuse a procedural default that occurs in those proceedings." *Davila v. Davis*, 137 S. Ct. 2058, 2065 (2017).[5] Where a petitioner claims that counsel was ineffective for failing to raise a claim on direct appeal but subsequently fails to raise that same claim in the state post-conviction proceedings, procedural default is not excused. *See Gerth v. Warden, Allen Oakwood Corr. Inst.*, 938 F.3d 821, 828-32 (6th Cir. 2019). Therefore, regardless of whether the district court properly excused Kelley's failure to raise his *Brady* claim on direct appeal, the failure of his post-conviction counsel to raise the claim at that stage cannot be excused. *See id.*; *Davila*, 137 S. Ct. at 2065.

Were Kelley's claim independently valid on the merits, *see infra* Part III.B, it might be proper to remand the case for the district court to order briefing and determine in the first instance whether Kelley wishes to plead some other grounds that caused his failure to raise the *Brady* claim.

---

[5] Although in *Martinez v. Ryan*, 566 U.S. 1 (2012), the Supreme Court recognized an exception where ineffective assistance of post-conviction counsel could constitute cause to excuse procedural default, that exception is irrelevant here. *See Davila*, 137 S. Ct. at 2065-67 (clarifying that *Martinez* only allowed ineffective assistance of post-conviction counsel to excuse procedural default for claims of ineffective assistance of *trial* counsel, not counsel on direct appeal). Because Kelley does not claim that ineffective assistance of *trial* counsel contributed to his *Brady* withholding claim, this narrow exception is irrelevant to his case.

However, given the meritless nature of Kelley's *Brady* claim, as discussed below, remand is unnecessary.

## B.

A *Brady* claim arises when (1) there is evidence favorable to the accused, "either because it is exculpatory or because it is impeaching; (2) that evidence was "suppressed by the State, either willfully or inadvertently"; and (3) "prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).

Prejudice is the subject of the warden's second assignment of error by the district court. The warden argues that Kelley was not prejudiced because the impeaching evidence was not material. Materiality "do[es] not require a defendant to show that disclosure of the evidence would have ultimately led to an acquittal." *Gumm v. Mitchell*, 775 F.3d 345, 363 (6th Cir. 2014). Rather, evidence is material "when there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different." *Cone v. Bell*, 556 U.S. 449, 469-70 (2009). "A reasonable probability does not mean that the defendant 'would more likely than not have received a different verdict with the evidence,' only that the likelihood of a different result is great enough to 'undermine[ ] confidence in the outcome of the trial.'" *Smith v. Cain*, 565 U.S. 73, 75-76 (2012) (quoting *Kyles v. Whitley*, 514 U.S. 419, 434 (1995)) (alteration in original).

A review of Kelley's one-day jury trial reveals that the failure to obtain impeachment evidence for Ferguson is not material because it would not undermine confidence in the guilty verdict. The key testimony in Kelley's case came not from Ferguson, but from Ferguson's confidential informant, Zion. Zion testified that he performed the drug transactions personally and on multiple occasions with Kelley. He made an eyewitness identification of the man with whom he transacted and identified that man in the courtroom as the defendant, Kelley. Zion made a voice

identification of Kelley as the caller who arranged another drug buy. He further described how he went to Kelley's home to buy crack cocaine and watched Kelley weigh and bag the drugs before selling them to Zion. Zion also identified various pieces of the prosecution's evidence—baggies of crack cocaine from the drug buys—which the state's forensic chemist confirmed was crack cocaine.

By contrast, Ferguson's testimony provided primarily background information and corroboration of Zion's testimony from what he heard over the recordings. For example, Ferguson explained the definition of a controlled buy. DE 5-4, Jury Trial Tr., Page ID 320-23. While Ferguson also provided additional eyewitness identification of Kelley at one transaction, Zion provided the only eyewitness identification of Kelley as the source of drugs for the remaining three transactions. Following its review of the evidence and its credibility determinations in a case where Zion and the lab confirmation of the drug product provided the bulk of the evidence, the jury delivered a guilty verdict. While there is a "reasonable *possibility* that either a total, or just a substantial discount of [Ferguson's] testimony might have produced a different result, . . . petitioner's burden is to establish a reasonable *probability* of a different result." *Strickler*, 527 U.S. at 291 (emphasis in original). Because Kelley has not met that burden, his *Brady* claim fails.

## IV.

For the foregoing reasons, we reverse the district court's grant of Kelley's habeas corpus petition and remand for consideration of Kelley's remaining claims for relief.

COLE, Circuit Judge.  Because (1) Kelley's amended petition relates back to the original petition, (2) he exhausted his *Brady* claim in the state post-conviction process and can overcome procedural default stemming from his failure to raise this claim on direct appeal, and (3) the claim succeeds on the merits, I would affirm the district court's grant of Kelley's habeas petition.  For these reasons, I respectfully dissent.

I.  ANALYSIS

**A.  Statute of Limitations**

The majority opinion does not reach the warden's statute-of-limitations argument as it reverses on other grounds.  But because I would affirm, I begin by addressing the timeliness issue.  The warden argues that the district court's decision to grant Kelley's motion to amend was in error because the amended petition was untimely.  The Antiterrorism and Effective Death Penalty Act ("AEDPA") imposes a one-year statute of limitations on federal habeas petitions.  28 U.S.C. § 2244(d)(1).  But a court may still consider a habeas petition filed outside of this period under certain circumstances.  Relevant here, a court may still review an otherwise untimely amended petition if the amended petition's claims "relate back" to the claims raised in the original, timely petition.  *Id.* § 2242; Fed. R. Civ. P. 15(c).[1]  "So long as the original and amended petitions state claims that are tied to a *common core of operative facts*, relation back will be in order."  *Mayle v. Felix*, 545 U.S. 644, 664 (2005) (emphasis added) (footnote omitted).  We review a district court's relation-back conclusion de novo, *Innovation Ventures, LLC v. Custom Nutrition Labs., LLC*, 912 F.3d 316, 333 (6th Cir. 2018), and review a district court's decision to grant a motion to amend for an abuse of discretion, *Hill v. Mitchell*, 842 F.3d 910, 922 (6th Cir. 2016).

---

[1] The doctrine of equitable tolling also permits courts to review a petition filed outside of AEDPA's one-year statute of limitations, *Holland v. Florida*, 560 U.S. 631, 649 (2010), but as the relation-back theory permits review of Kelley's amended petition, I do not address this alternative.

Here, Kelley's original and amended petition "are tied to a common core of operative facts[.]" *Mayle*, 545 U.S. at 664. The original petition directly addressed Ferguson's professional misconduct and explained that "[t]he crux of Petitioner's newly discovered evidence are documents which demonstrate that an investigation of Det. Ferguson in 2012–2013 led to Det. Ferguson being fired[.]" (Pet. for Writ of Habeas Corpus, R. 1, PageID 39.) The motion to amend the petition generally notes Ferguson's lack of credibility and corruption and specifically asserts that "the prosecutor's failure to disclose the fact that Detective Ferguson was being investigated for corruption violated Due Process." (Pet.'s Suppl. Br., R. 24, PageID 1367.) So, both the original petition and the amended petition "are tied to a common core of operative facts" related to the investigation into Ferguson's misconduct. *Mayle*, 545 U.S. at 664.

It is true that Kelley's motion to amend provides more direct legal authority related to a *Brady*-withholding claim than his original petition did. But, in *Mayle*, the Supreme Court emphasized that it was the difference in *facts*—not the difference in legal theories—necessary to resolve the claims that ultimately failed to support relation back in that instance. *Id.* at 657, 660–61. There, the Court was much less concerned that the amended petition raised a Fifth Amendment issue while the original petition raised a Sixth Amendment issue. Indeed, *Mayle* approvingly cited Moore's Federal Practice Guide, which acknowledges that "relation back [is] ordinarily allowed 'when the new claim is *based on the same facts* as the original pleading and only changes the legal theory[.]'" *Id.* at 664 n.7 (emphasis added) (citing 3 James Moore, et al., *Moore's Federal Practice* § 15.19[2], p. 15–18 (3d ed. 2004)). Here, though the case law underlying the two petitions may differ to an extent, the facts underlying the claims are the same, so relation back is appropriate.

Further, this court's reasoning in *Hill v. Mitchell*, 842 F.3d 910, 925 (6th Cir. 2016), does not preclude relation back in the present case. The *Hill* court determined relation back did not

apply, explaining that the original petition "was completely bereft of specific fact allegations or evidentiary support" and "merely speculated that the State had *Brady* material, nothing more." *Id.* at 924. The court was concerned that if relation back were permitted, "habeas petitioners could routinely circumvent AEDPA's statute of limitations on *Brady* claims" by including a "catch-all *Brady* claim in his original petition . . . and hope that evidence eventually turns up." *Id.* at 925. But Kelley's case is distinguishable. Kelley's original petition did not present a "catch-all *Brady* claim[.]" *Id.* Rather, it pointed to specific information regarding the investigation into Ferguson's misconduct and the impact of this information on Kelley's conviction. Unlike the petitioner in *Hill*, Kelley described what the prosecution withheld: information on the investigation into Ferguson's misconduct. Thus, the *Hill* court's concerns are not present here.

Given that "the original and amended petitions state claims that are tied to a common core of operative facts, relation back [is] in order." *Mayle*, 545 U.S. at 664. Further, it was not an abuse of discretion for the district court to grant Kelley's motion to amend and proceed with its analysis of Kelley's amended habeas petition.

**B. Exhaustion and Procedural Default**

I now move to habeas's next set of hurdles: exhaustion and procedural default. For a federal court to hear a petitioner's habeas claim, "a state prisoner is required to present the state courts with the same claim, or a claim 'substantially equivalent' to the claim, urged upon the federal courts." *Jalowiec v. Bradshaw*, 657 F.3d 293, 304 (6th Cir. 2011) (quoting *Picard v. Connor*, 404 U.S. 270, 275–78 (1971)). If a petitioner fails to present his claims to the state court—in other words, fails to "exhaust" these claims—or if the state court does not review these claims due to "an independent and adequate state procedural rule," the claims are procedurally defaulted. *Coleman v. Thompson*, 501 U.S. 722, 731–32, 750–51 (1991); *Seymour v. Walker*, 224 F.3d 542,

550 (6th Cir. 2000). Even if a claim is procedurally defaulted, a federal court can still review the claim if the petitioner establishes "cause for the default and actual prejudice as a result of the alleged violation of federal law[.]" *Coleman*, 501 U.S. at 750.

The majority addresses two layers of procedural default: one on direct appeal and one during state post-conviction review. Because Kelley establishes cause and prejudice for the default on direct appeal and Kelley presented the *Brady* claim in the post-conviction process, review on the merits is appropriate.

### 1. Direct Appeal

Kelley does not argue that he raised the *Brady*-withholding claim on direct appeal. This much is clear from the Michigan state court order denying Kelley relief from the judgment. In this order, the Michigan state court determined that Kelley failed to raise a claim related to Ferguson's misconduct on direct review and none of the available exceptions to excuse this state procedural bar applied. Thus, the state court declined to address the claim based on an "independent and adequate state procedural rule," making the claim procedurally defaulted for the purposes of federal habeas review. *Coleman*, 501 U.S. at 750. Given this, a federal court may only hear this procedurally defaulted claim if Kelley establishes "cause for the default and actual prejudice as a result of the alleged violation of federal law[.]" *Id.*

One way Kelley can demonstrate cause for the default is by showing that his counsel's failure to raise the issue of Ferguson's misconduct on direct appeal amounted to a Sixth Amendment violation. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *see also Joseph v. Coyle*, 469 F.3d 441, 459 (6th Cir. 2006). To determine whether cause and prejudice exist to excuse a procedural default, a federal court independently evaluates whether a petitioner's counsel was

constitutionally ineffective, rather than applying AEDPA's deferential standard of review. *Coyle*, 469 F.3d at 459 ; *see also Coleman*, 501 U.S. at 753–54.

Kelley establishes that his appellate counsel was constitutionally ineffective for failing to raise issues related to Ferguson's misconduct and that the failure to do so resulted in prejudice to Kelley. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). A full analysis of the issue requires reviewing the elements of the *Brady*-withholding claim, which is undertaken in more detail in Part I.C below and is not duplicated here. *See Banks v. Dretke*, 540 U.S. 668, 691 (2004) (explaining the overlap between a cause-and-prejudice analysis and a *Brady* analysis). In short, because Kelley's *Brady* claim is meritorious, his appellate counsel's failure to raise the claim on direct appeal was constitutionally ineffective and resulted in prejudice to Kelley. *See McFarland v. Yukins*, 356 F.3d 688, 712 (6th Cir. 2004) (concluding that appellate counsel's failure to raise a meritorious claim provided cause and prejudice to excuse a procedural default).

### 2. State Post-Conviction Appeal

As for the state post-conviction appeal, it is true that certain cases involve multiple layers of procedural default and require multiple cause-and-prejudice analyses before federal review is permitted. *See Edwards*, 529 U.S. at 453 ("[A]n ineffective-assistance-of-counsel claim asserted as cause for the procedural default of another claim can itself be procedurally defaulted" but "that procedural default may . . . *itself* be excused if the prisoner can satisfy the cause-and-prejudice standard with respect to *that* claim."). But we only need to conduct a cause-and-prejudice analysis to excuse a second procedural default if a second procedural default actually occurred. Because Kelley presented both the ineffective-assistance-of-appellate-counsel claim and the *Brady*-withholding claim in his state post-conviction motions, the claim was exhausted, and no second layer of default occurred at the state post-conviction stage.

For a federal court to hear a habeas claim, "a state prisoner is required to present the state courts with the same claim, or a claim 'substantially equivalent' to the claim, urged upon the federal courts." *Jalowiec*, 657 F.3d at 304 (quoting *Picard*, 404 U.S. at 275–78). Relying on Supreme Court precedent, we have held that it is "sufficient if the substance of the claim was presented to the state courts, such that the ultimate question would have been the same despite variations in the legal theory or factual allegations urged in its support." *Jells v. Mitchell*, 538 F.3d 478, 504 (6th Cir. 2008) (first citing *Picard*, 404 U.S. at 277–78; and then citing *Whiting v. Burt*, 395 F.3d 602, 612–13 (6th Cir. 2005)). To determine whether a petitioner presented a claim to the state courts,

> we ask whether the petitioner: (1) relied upon federal cases employing constitutional analysis; (2) relied upon state cases employing federal constitutional analysis; (3) phrased the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleged facts well within the mainstream of constitutional law.

*Hand v. Houk*, 871 F.3d 390, 418 (6th Cir. 2017) (citing *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000)). Here, to avoid procedural default at the post-conviction stage, Kelley must have presented the state courts with the ineffective-assistance-of-appellate-counsel claim and the *Brady*-withholding claim. *See Edwards*, 529 U.S. at 452–53. He presented both.

First, Kelley raised the ineffective-assistance-of-counsel claim in his motion for state post-conviction review. Kelley began by identifying the relevant legal standards for constitutionally ineffective assistance of counsel. He then explained that "he detailed all issues that he felt had merit that should be addressed in the Appeal surrounding misconduct on the part of Detective Ferguson[,]" but that his attorney failed to include this issue in the appeal. (Mot. for Relief from J., R. 5-9, PageID 889–90.) He argued that "[t]his information is of such an importance to make known to the Court of Appeals that the conscious decision not to include it amounts to deficient

performance which prejudiced him in his quest for an Appeal." (*Id.* at PageID 890.) Kelley's motion presented both the factual and legal basis for the ineffective-assistance-of-counsel claim based on counsel's failure to raise a claim related to Ferguson's misconduct, so it was exhausted.

As to the *Brady*-withholding claim, Kelley presented the factual basis for this claim and cited to relevant case law applying federal constitutional analysis. *See Hand*, 871 F.3d at 418. First, in his motion for state post-conviction relief, Kelley asserted that "newly discovered evidence as to Detective Ferguson[']s character and propensity to lie and distort the actual facts rises to the level of impeachment evidence making a different result in the trial probable." (Mot. for Relief from J., R. 5-9, PageID 882.) In his supporting brief, Kelley argued that "[a] Defendant should be entitled to a new trial when the Defendant's conviction is predicated on the testimony of a key witness linking the Defendant to the alleged crime when the newly discovered impeachment evidence casts doubt on the credibility of that key witness." (*Id.* at PageID 892.)

These statements identify both the importance of the impeachment evidence withheld from the defense and the facts relevant to the *Brady*-withholding claim. What is more, throughout the brief, Kelley cited to cases that rely on and apply *Brady*. For example, as the warden acknowledges and the district court highlighted, Kelley cited *United States v. Agurs*, 427 U.S. 97 (1976), to support his claims detailing the misconduct-related impeachment evidence and its impact on Kelley's conviction.[2] Kelley's motion for post-conviction relief quoted *Agurs* to explain that "[i]f *omitted evidence* creates a reasonable doubt that did not otherwise exist, constitutional error has been committed." (Mot. for Relief from J., R. 5-9, PageID 893 (emphasis added) (quoting *Agurs*, 427 U.S. at 112).) The analysis in *Agurs* relied heavily on *Brady* to evaluate the withheld evidence and its impact on the trial. 427 U.S. at 102–113. Given that Kelley presented the facts relevant to

---

[2] Notably, the warden cites to *United States v. Agurs* to support his arguments against the merits of the *Brady* claim. *See* Appellant Br. 53.

the withholding claim and "relied on federal cases employing constitutional analysis," he sufficiently presented the *Brady*-withholding claim to the state courts. *See Hand,* 871 F.3d at 418.

Further, on appeal from the state trial court's denial of his post-conviction motion for relief from judgment, Kelley cited *Mathis v. Berghuis*, 90 F. App'x 101 (6th Cir. 2004), to support his argument for a new trial. (Mot. for Relief from J. Appeal, R. 5-14, PageID 1140.) In *Mathis*, the court observed that "[t]here is no question that the Supreme Court precedent governing Mathis's petition is *Brady v. Maryland* and its progeny[,]" and went on to analyze Mathis's claims under this line of cases. *Mathis*, 90 F. App'x at 105–06. Again, Kelley relied on "federal cases employing constitutional analysis" in making his claims, thereby exhausting the *Brady*-withholding claim in the state courts.

Granted, Kelley's citations and statements appear in portions of his brief that frame the argument as one for a new trial, a particular form of relief under Michigan state law. But this does not change the fact that both the factual basis and the legal theory for the *Brady*-withholding claim appeared in his motions to the state courts. *See Whiting*, 395 F.3d at 612–13 (quoting *Picard*, 404 U.S. at 277–78) ("It is sufficient if 'the substance of a federal habeas corpus claim' be presented to the state courts, and there are instances in which 'the ultimate question for disposition' will be the same despite variations in the legal theory or factual allegations urged in its support.").

Nor does *Jalowiec* alter this determination. In *Jalowiec*, the court concluded that the petitioner did not exhaust his *Brady* claim because he did not present the same claim or a substantially similar claim to the state courts. 657 F.3d at 304. The *Jalowiec* court was not convinced that the habeas petitioner "gave the state courts the opportunity to apply the legal principles governing Jalowiec's present *Brady* claim." *Id.* But in its reasoning, the court did not evaluate the substance of Jaloweic's state court briefings. Rather, the court only noted Jaloweic's

asserted theories for relief—"that the prosecution violated his due process right to a fair trial by suborning perjury, and that his trial counsel's failure to conduct a more thorough pre-trial investigation amounted to ineffective assistance of counsel"—did not permit the court the opportunity to decide the constitutional issue. *Id.*

An examination of Kelley's state court briefings shows more than assertions of sweeping theories of relief as was the case in *Jaloweic*. Kelley presented the state court with the material facts underlying his *Brady* claim *and* cited to case law employing a constitutional *Brady* analysis. Thus, the substance of Kelley's arguments gave the Michigan courts the opportunity to consider the constitutional claim, distinguishing this case from *Jalowiec*. *See also Bray v. Andrews*, 640 F.3d 731, 735 (6th Cir. 2011) (quoting *Wagner v. Smith*, 581 F.3d 410, 414–15 (6th Cir. 2009)) ("[T]he petitioner need only give the state courts 'the opportunity to see both the factual and legal basis for [the] claim.'").

Because Kelley presented both his *Brady*-withholding and ineffective-assistance-of-appellate-counsel claims to the state court in his state post-conviction proceedings, the claims were exhausted, and no additional layer of procedural default occurred that would require the additional cause-and-prejudice analysis undertaken by the majority. Given that Kelley's claim is timely and clears AEDPA's threshold hurdles, I proceed to the merits of the claim.

**C. Merits**

*1. Standard of Review*

In its opinion, the district court did not decide which standard of review to apply to its merits determination, explaining that even under AEDPA's deferential standard, Kelley was entitled to relief. Under AEDPA, if a state court issued a decision on the merits, a federal court may only grant relief if the state court's decision "was contrary to, or involved an unreasonable

application of, clearly established Federal law" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). In contrast, if there is no state court decision on the merits, then de novo review is appropriate. *See Rompilla v. Beard*, 545 U.S. 374, 390 (2005) (citing *Wiggins v. Smith*, 539 U.S. 510, 534 (2003)).

Though the state court did not fully address the merits of a *Brady*-withholding claim, the state court arguably addressed elements of the *Brady* analysis while assessing whether cause existed to excuse Kelley's failure to raise the issue on direct appeal. The district court applied AEDPA's deferential standard out of caution because there is case law that indicates AEDPA deference is appropriate when state courts address elements of a petitioner's claim while resolving other issues. *See Hodge v. Haberlin*, 579 F.3d 627, 643 (6th Cir. 2009); *Flint v. Carr*, 10 F.4th 786, 796–97 (7th Cir. 2021). Because Kelley's *Brady* claim is meritorious even under AEDPA's deferential standard, I similarly do not delve further into the appropriate standard were this not the case. *Cf. Knowles v. Mirzaynce*, 556 U.S. 111, 123–24 (2009) (applying both standards of review).

*2.* Brady *Elements*

To succeed on his *Brady* claim, Kelley must prove that (1) the state "either willfully or inadvertently" suppressed (2) favorable exculpatory or impeaching evidence, and (3) prejudice ensued. *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999).

Under clearly established Supreme Court precedent, Kelley establishes that the state suppressed favorable evidence by failing to disclose information about Ferguson's misconduct. First, the Supreme Court has made clear that the prosecution's *Brady* responsibilities "encompass[] evidence 'known only to police investigators and not to the prosecutor.'" *Id.* at 280–81 (citing *Kyles v. Whitley*, 514 U.S. 419, 438 (1995)); *see also Harris v. Lafler*, 553 F.3d 1028, 1033 (6th

Cir. 2009) (internal citations omitted) (first citing *Strickler*, 527 U.S. at 280–81; and then citing *Agurs*, 427 U.S. at 107) ("*Brady* thus applies to relevant evidence in the hands of the police, whether the prosecutors knew about it or not, whether they suppressed it intentionally or not, and whether the accused asked for it or not[.]"). Second, favorable evidence includes both exculpatory and impeachment evidence. *See United States v. Bagley*, 473 U.S. 667, 676 (1985). Here, the police investigators had impeachment material (information about the investigation into Ferguson's misconduct) about a witness (Ferguson), albeit unknown to the prosecutor, that was not provided to the defense. Given the Supreme Court's clear direction as to these elements, withholding this information satisfies *Brady*.

This leaves *Brady*'s final element: prejudice. To succeed here, Kelley must establish that the withheld impeachment evidence was material. *Strickler*, 527 U.S. at 280. Evidence is material if it leads to the "reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different." *Cone v. Bell*, 556 U.S. 449, 469–70 (2009). But "[a] reasonable probability does not mean that the defendant 'would more likely than not have received a different verdict with the evidence,' only that the likelihood of a different result is great enough to '*undermine[] confidence in the outcome of the trial*.'" *Smith v. Cain*, 565 U.S. 73, 75–76 (2012) (emphasis added) (quoting *Kyles*, 514 U.S. at 434). The *Brady* standard requires a court to examine "whether 'the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.'" *Strickler*, 527 U.S. at 290 (quoting *Kyles*, 514 U.S. at 435).

In its analysis, the state post-conviction court explained that "[b]ecause there was sufficient evidence to convict defendant even without Officer Ferguson's testimony and defendant has not shown any false testimony by Officer Ferguson, defendant has not shown that he was prejudiced

by appellate counsel's failure to raise the credibility issues on appeal." (Mich. Post-Conviction Op. & Order, R. 5-11, PageID 1034.) But the state court failed to address or acknowledge how information regarding Ferguson's credibility would have impacted the credibility of the investigation as a whole, including the credibility of another testifying witness in the case.

Had the evidence about Ferguson's misconduct been disclosed, it would have been enough to undermine confidence in Kelley's conviction. *See Cain*, 565 U.S. at 75–76. Kelley was convicted following a two-day trial during which only three witnesses were called: Ferguson, Ferguson's informant Michael Zion, and a forensic chemist Rachel Topacio. The credibility of each witness was paramount, and as the lead detective who also sat at the prosecution's table throughout trial, the impact of Ferguson's misconduct on the proceedings cannot be limited to only his testimony.

First, Zion offered to act as a confidential informant in hopes of receiving leniency in a pending matter—leniency which he indeed received. Additionally, testimony repeatedly highlighted the control Ferguson had over Zion's involvement in the investigation and the circumstances of the controlled buys that formed the basis of the charges against Kelley. While Zion provided eyewitness identifications of Kelley during trial, Ferguson also provided an identification. In fact, Ferguson identified Kelley at the first buy—the buy that initiated the entire investigation.

Further, in closing arguments, the prosecution emphasized Ferguson's experience with narcotic investigations and his ability to corroborate Zion's testimony. Additionally, both sides highlighted credibility. As lead detective and primary coordinator of the controlled buys, Ferguson's credibility implicated the credibility of his informant, albeit to no fault of Zion. So, to the extent that the withheld evidence adversely impacts both Ferguson's and Zion's credibility—

the two relevant witnesses according to the majority—any confidence in Kelley's conviction rests primarily on the forensic chemist's limited testimony.

Thus, the impact of the withheld evidence here is a far cry from that of the "several isolated pieces of suppressed evidence" found to be immaterial to the defendant's guilt in *Cone*. 556 U.S. at 462, 474; *see also Harris*, 553 F.3d at 1034 (collecting cases) ("Considerable authority from the Supreme Court and our court indicates that a defendant suffers prejudice from the withholding of favorable impeachment evidence when the prosecution's case hinges on the testimony of one witness."). Given circuit and Supreme Court precedent, had evidence of Ferguson's misconduct been disclosed, Kelley's case could be viewed "in such a different light as to undermine confidence in the verdict." *Kyles*, 514 U.S. at 435. And a decision to the contrary cannot be upheld even under AEDPA's deferential review. Thus, Kelley establishes prejudice resulting from the state's failure to disclose evidence relating to Ferguson's misconduct, and in doing so, establishes a meritorious *Brady* claim. *See Strickler*, 527 U.S. at 280–81.

## II. CONCLUSION

For the foregoing reasons, I would affirm the district court's grant of habeas corpus to Kelley, and I respectfully dissent.