**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-2775
_____

MICHAEL MCLAUGHLIN
Appellant,

v.

DISTRICT ATTORNEY PHILADELPHIA; ATTORNEY GENERAL
PENNSYLVANIA; PENNSYLVANIA BOARD OF PROBATION AND PAROLE
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(District Court No. 2-16-cv-03724)
District Judge:  Honorable Nitza I. Quiñones Alejandro

Submitted Pursuant to Third Circuit L.A.R. 34.1(a) October 19, 2023
_____

Before:  CHAGARES, <u>Chief Judge</u>, PHIPPS and CHUNG, <u>Circuit Judges</u>

(Filed October 24, 2023)
_____

OPINION*
_____

CHUNG, <u>Circuit Judge</u>.

Michael McLaughlin is a former Pennsylvania state prisoner who seeks federal

---

* This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

habeas corpus relief.[1]  He claims that the trial court violated his Sixth Amendment rights by allowing him to forgo counsel without a proper waiver-of-counsel colloquy.  Because McLaughlin's claim is procedurally defaulted, we will affirm the District Court's order denying his petition.

I.    BACKGROUND[2]

In 2005, the District Attorney of Philadelphia charged McLaughlin with stalking his ex-girlfriend and prosecuted him in Pennsylvania state court.  Defense counsel was appointed for McLaughlin, who, early in the progression of the case, began asking to waive his appointed counsel and represent himself.  At an August 1, 2006 hearing, trial court Judge Amanda Cooperman granted McLaughlin's request and allowed McLaughlin to represent himself.  No transcript of the hearing exists, however, and it remains unclear to what extent Judge Cooperman conducted a waiver-of-counsel colloquy.  In any case, the record is clear that McLaughlin began representing himself after the August 2006 hearing.

Several months after Judge Cooperman allowed McLaughlin to represent himself, she recused herself from the case due to McLaughlin's repeated disregard of her

---

[1]    McLaughlin filed his federal habeas petition on July 7, 2016, while he was still in custody.  He was released on June 17, 2018.  Even though McLaughlin has now been released, his petition meets the "in custody" requirement of 28 U.S.C. § 2254(a), because he was in custody when he filed it.  See Spencer v. Kemna, 523 U.S. 1, 7 (1998).  We also agree with the District Court that McLaughlin's petition is not moot, because he suffers "collateral consequences" from his felony conviction.  Id. at 7–8.

[2]    Because we write for the parties, we recite only facts pertinent to our decision.

2

instructions to stop contacting her staff seeking case-related advice. McLaughlin's case was reassigned to Judge Willis F. Berry. McLaughlin first appeared before Judge Berry at a hearing on February 26, 2007. The hearing transcript shows that McLaughlin appeared "Pro Se" and as "1st Chair;" McLaughlin's "2nd Chair" was his formerly-assigned attorney, Steven Laver. Joint Appendix ("JA") 59. Judge Berry confirmed that McLaughlin wanted to proceed pro se and asked McLaughlin a series of questions. Judge Berry also said, "I understand you spoke to Judge Cooperman, and that judge put on record the same kinds of questions I'm asking you, and you answered the questions."[3] Id. McLaughlin answered, "Yes," confirming that Judge Cooperman had conducted some type of colloquy. Id. After confirming once more that McLaughlin wanted to represent himself, Judge Berry said, "All right," and "Mr. Laver here is going to be backup." Id.

McLaughlin went to trial in August and September 2007. He appeared pro se, with a new attorney, Kevin Mincey, as his standby counsel. During the trial, Judge Berry held McLaughlin in contempt multiple times. And while the jury was deliberating, McLaughlin fled. The jury delivered its verdict while McLaughlin was *in absentia* and found him guilty.

McLaughlin had a post-trial contempt hearing on September 18, 2007. At the

---

[3]    Neither party claims that this colloquy satisfied the requirements of the Sixth Amendment.

3

hearing, he told Judge Berry that he no longer felt "competent or capable" of representing himself, and Judge Berry appointed attorney Mincey to serve as McLaughlin's counsel. Id. at 232–33. When McLaughlin had his sentencing hearing six weeks later, on October 30, 2007, attorney Mincey represented him. Attorney Mincey argued two motions on McLaughlin's behalf. Neither of those motions challenged the adequacy of the waiver-of-counsel colloquy. Judge Berry sentenced McLaughlin to two to four years in prison, followed by three years' probation. At the end of the sentencing hearing,—and for the first time in fifteen months—McLaughlin claimed, "I was never properly colloquied, Your Honor. If you would have told me on the record I would have had to be by the book all the time—I know I made mistakes." Id. at 257.[4] McLaughlin raised no post-

---

[4]     It seems McLaughlin was claiming that an incomplete colloquy resulted in his repeated misconduct at trial. The record shows, however, that the trial-level judges frequently advised McLaughlin of the rules and that McLaughlin repeatedly ignored them—beginning with his misconduct that led Judge Cooperman to recuse, continuing through trial, and at the end of trial, when he absconded.

In any event, when a Pennsylvania court later reviewed McLaughlin's conviction as part of his challenge under Pennsylvania's Post Conviction Relief Act (PCRA), it considered evidence of Mclaughlin's understanding of the elements of a waiver-of-counsel colloquy under Pennsylvania law, which largely track federal constitutional requirements. The reviewing court found that McLaughlin "was familiar" with and "could reference" all elements of Pennsylvania's colloquy. JA 334. And although McLaughlin testified to the reviewing court that he did not know the answers to all questions in the colloquy when he waived counsel, the court rejected that testimony as not credible. For example, against McLaughlin's after-the-fact testimony that he did not understand the charges against him or the sentence he faced, the court noted that he understood the charges well enough to identify correct "issues and … theories of law" while representing himself, and that he had faced offenses with even greater penalties in the past. Supplemental Appendix 136.

4

sentence motions regarding the adequacy of the colloquy (or any other issue), whether through counsel or on his own.

McLaughlin challenged his conviction in Pennsylvania state courts—first on direct appeal, and then in a collateral attack under PCRA. In both McLaughlin's direct appeal and PCRA proceedings, he argued that the trial court did not conduct a proper waiver-of-counsel colloquy. When the Superior Court of Pennsylvania considered his claim for the first time on his direct appeal, it reviewed the record and concluded that McLaughlin forfeited the issue because he "failed to raise this issue before the trial court at any point prior to the filing of his appeal" or in "a post-sentence motion," as required under Pennsylvania Rule of Appellate Procedure 302(a).[5] Id. at 276. When the Superior Court later considered McLaughlin's PCRA petition, it decided again that McLaughlin forfeited the issue. The Supreme Court of Pennsylvania denied McLaughlin's petitions for allowance of appeal in both cases.

McLaughlin then filed this federal habeas petition. In addition to claims not at

---

[5] Rule 302(a) and Pennsylvania state courts refers to issues not raised in the trial court as "waived." See 210 Pa. Code § 302(a). In our case law applying federal appellate procedure, however, we have followed the Supreme Court's distinction between waiver, which is "the 'intentional relinquishment or abandonment of a known right'" and forfeiture, which is "the failure to make the timely assertion of a right"—for example, "an inadvertent failure to raise an argument." Barna v. Bd. of Sch. Dirs. of Panther Valley Sch. Dist., 877 F.3d 136, 147 (3d Cir. 2017) (quoting United States v. Olano, 507 U.S. 725, 733 (1993)). According to this distinction, we would refer to an issue not preserved under Rule 302(a) as forfeited. Thus, for consistency with our case law, we will refer to such claims as forfeited, unless quoting Pennsylvania statute or cases.

5

issue here, he claimed a Sixth Amendment violation on grounds that he "never waived counsel." Id. at 412. The District Court referred McLaughlin's petition to a Magistrate Judge, who recommended that the Court deny it. The Magistrate Judge found that McLaughlin procedurally defaulted his waiver-of-counsel claim because state courts held that he forfeited it for appeal.[6] The District Court adopted the Magistrate Judge's recommendation "in its entirety," saying that the Magistrate Judge "correctly concluded … that Petitioner's waiver of counsel claim is procedurally defaulted." Id. at 35. McLaughlin sought a Certificate of Appealability from this Court. We granted it on several issues, all related to McLaughlin's Sixth Amendment waiver-of-counsel claim.[7]

II.     DISCUSSION[8]

The District Court ruled that McLaughlin's Sixth Amendment waiver-of-counsel claim was procedurally defaulted due to his failure to raise it with the trial court, causing Pennsylvania reviewing courts to find he forfeited the issue under Rule 302(a). We agree.

---

[6]     The Magistrate Judge also questioned whether McLaughlin even raised this waiver-of-counsel theory in this petition. We interpret McLaughlin's habeas petition as asserting this claim. See, e.g., JA 412, 435.

[7]     McLaughlin's federal habeas petition brought other claims, which the District Court also denied. Because we only granted a Certificate of Appealability on McLaughlin's Sixth Amendment waiver-of-counsel claim, we only address that claim here.

[8]     The District Court had jurisdiction under 28 U.S.C. § 2254. We have jurisdiction under 28 U.S.C. §§ 1291 and 2253. We conduct plenary review of the District Court's ruling. See Albrecht v. Horn, 485 F.3d 103, 114 (3d Cir. 2007).

6

Under the doctrine of state procedural default, federal courts will not reach the merits of habeas claims when state courts have found such claims forfeited on procedural grounds. See Coleman v. Thompson, 501 U.S. 722, 729–30 (1991). The doctrine preserves state courts as the first-line reviewers of constitutional issues in state proceedings. As the Supreme Court has put it, procedural default ensures that the state trial remains "the 'main event,' so to speak, rather than a 'tryout on the road' for what will later be the determinative federal habeas hearing." Wainwright v. Sykes, 433 U.S. 72, 90 (1977); see also Harrington v. Richter, 562 U.S. 86, 103 (2011).

The question for federal courts under the procedural default doctrine is whether the state procedural bar is "independent of the federal question and adequate to support the [state court's] judgment." Coleman, 501 U.S. at 729. If it is, then federal courts do not decide the merits. See id.

Here, the Superior Court applied Rule 302(a) and found that McLaughlin forfeited review of his Sixth Amendment claim. See 210 Pa. Code § 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal."). McLaughlin does not dispute that Rule 302(a) is independent of federal law and facially adequate. Nor can he: the Third Circuit has previously held that Rule 302(a) can support a procedural default. See Werts v. Vaughn, 228 F.3d 178, 194 (2000). Rather, McLaughlin argues that two limited exceptions permit this Court's review. First, he argues that the Superior Court's application of Rule 302(a) was the kind of "exorbitant" application of an otherwise-sound rule that the Supreme Court said can make a state

7

ground inadequate in <u>Lee v. Kemna</u>, 534 U.S. 362 (2002). Second, he argues that even if he did procedurally default his claim, he has shown cause and actual prejudice to excuse his default. Because neither exception applies, McLaughlin has procedurally defaulted his claim and we do not reach the merits.

A.    <u>Exorbitant Application</u>

In <u>Lee</u>, the Supreme Court said that in a "limited category" of "exceptional cases," an otherwise-sound state rule might be inadequate for procedural default if the state court applied it in an "exorbitant" way. 534 U.S. at 376. The Supreme Court was guided by "[t]hree considerations, in combination," when finding the state court's application of a procedural rule was exorbitant. <u>Id.</u> at 381. These considerations were: (1) the defendant had "substantially complied with" the rule in question, such that he accomplished its "purpose;" (2) no published state court decision had ever required "flawless compliance" with the rules under the "unique circumstances" of the case; and (3) the record suggested that even the defendant's "perfect compliance" would not have changed the relevant decision. <u>Id.</u> at 381–83, 387. <u>Lee</u>'s three considerations, though not a test, are helpful "guideposts" for deciding whether a state court's application of a procedural rule is exorbitant. <u>Shotts v. Wetzel</u>, 724 F.3d 364, 371 (3d Cir. 2013).

Considering <u>Lee</u>'s guideposts, we conclude the District Court's application of Rule 302(a) was not exorbitant.

The first guidepost is whether the petitioner "substantially complied with" the rule, and thus accomplished its "purpose." <u>Lee</u>, 534 U.S. at 382, 387. McLaughlin did not

8

substantially comply with Rule 302(a) and the rule's purpose was not accomplished. To preserve a claim of trial court error under Rule 302(a), the appellant must object contemporaneously in the relevant trial court proceeding. Commonwealth v. May, 887 A.2d 750, 758 (Pa. 2005). The Rule serves several purposes, including ensuring that "the trial court that initially hears a dispute has had an opportunity to consider the issue," and to "correct its errors as early as possible;" conserving "judicial resources;" reducing "expense to the parties;" and promoting "fairness." In re F.C. III, 2 A.3d 1201, 1212 (Pa. 2010). The first time McLaughlin suggested any problem with his colloquy was after his sentencing in October 2007—two months after his trial, eight months after he confirmed with Judge Berry that he still wanted to proceed to trial pro se, and fifteen months after Judge Cooperman first allowed him to represent himself. By delaying so extensively, McLaughlin did not merely fail to technically comply with the contemporaneous-objection requirement, he barely noted his concern in the trial court at all. Thus, the first Lee guidepost cuts against McLaughlin.

The second guidepost is whether state law "directs flawless compliance" with the state rule under the "unique circumstances th[e] case presents." Lee, 534 U.S. at 382. This too cuts against McLaughlin. Pennsylvania courts generally require compliance with Rule 302(a). See Commonwealth v. Hill, 238 A.3d 399, 404 (Pa. 2020) ("[G]enerally speaking, an appellant waives any claim that he fails to preserve in the trial court."). Although Pennsylvania does recognize an exception for pro se litigants, this exception only applies to litigants who appear pro se "in the proceeding" during which

9

they should have preserved the issue.  Commonwealth v. Monica, 597 A.2d 600, 603 (Pa. 1991); see also Commonwealth v. Red, 937 A.2d 383, 384 (Pa. 2007) (per curiam) ("The decision in Commonwealth v. Monica … is distinguishable, because in that case there was no dispute that Appellant acted *pro se throughout his trial proceeding*."). McLaughlin had counsel in August 2006, when Judge Cooperman first allowed him to represent himself.  If Judge Cooperman did not conduct a proper colloquy at that hearing, McLaughlin should have objected then, through counsel.[9]  Because he did not, the Superior Court was not compelled to excuse Mclaughlin from the application of Rule 302(a) and the Superior Court followed established Pennsylvania law.

The third guidepost is whether the petitioner's "perfect compliance" would have changed the result.  Lee, 534 U.S. at 387.  Both parties agree that because Lee involved a different context, this third guidepost is not particularly relevant to our analysis here.  We agree.  But if we do ask the same question Lee did—whether McLaughlin's perfect

---

[9]     The evidence shows that McLaughlin knew the elements of a proper colloquy. See JA 285 ("I understood the parameters of 121.  And that a six question colloquy would have to be asked and answered.  So I did want her to go through the six questions so I fully understood."); id. at 334 (PCRA trial court's finding that McLaughlin "was familiar [with] and could reference the six requirements of a valid colloquy").  The record also reflects that McLaughlin was not shy in vocally asserting his rights in his many proceedings, including his right to a waiver-of-counsel colloquy—for example, when he urged Judge Cooperman to give him a "colloquy … on the record" in July 2007. Id. at 48.  Moreover, McLaughlin had standby and/or appointed counsel at every proceeding following the August 2006 hearing before Judge Cooperman.  Thus, if McLaughlin had any genuine concerns about the colloquy, the evidence indicates that he had ample knowledge and opportunity to raise them whether on his own or through counsel.  He did not do so, however, until he had fully played his chosen hand and lost.

10

compliance with the procedural rule would have changed the result in the trial court—this guidepost also suggests that the Superior Court's rule application was not exorbitant. Nothing in the record signals that the trial courts would have refused a request for a full colloquy had McLaughlin objected contemporaneously. The transcripts of McLaughlin's hearings before Judge Cooperman reflect the great care she took to guard his right to counsel. Likewise, the transcripts of McLaughlin's hearings before Judge Berry demonstrate a similar concern (for example, Judge Berry confirmed with McLaughlin that Judge Cooperman had asked him colloquy-type questions). These exchanges suggest that if McLaughlin had objected to the adequacy of his colloquy, Judges Cooperman and Berry would have conducted a full colloquy anew. Thus, although the third guidepost does not weigh heavily in our analysis, it factors against finding that the Superior Court's rule application was exorbitant.

In sum, we conclude that the Superior Court's application of Rule 302(a) against McLaughlin was not exorbitant and is adequate as a procedural bar to his claim.

B.     Excuse for Default

Even if a procedural default rests on an independent and adequate state ground, we can still review a habeas claim if the petitioner shows both "cause" for the default and "actual prejudice" from the constitutional error. Davila v. Davis, 582 U.S. 521, 524 (2017). McLaughlin argues that his lack of counsel supplies both cause and actual prejudice to overcome his default.

We need not decide whether McLaughlin suffered actual prejudice, because the

11

record shows that his procedural default was not caused by a lack of counsel. See Engle v. Isaac, 456 U.S. 107, 134 n.43 (1982) ("Since we conclude that these respondents lacked cause for their default, we do not consider whether they also suffered actual prejudice."). McLaughlin can perhaps argue that he did not know Pennsylvania's issue-preservation rules, and that his lack of counsel between August 2006 and September 2007 was responsible for his procedural failings during that period. But even if true, that would not explain McLaughlin's failure to object when he first waived counsel while represented by attorney Laver in August 2006, or to raise the issue in a post-trial motion while represented by attorney Mincey. Accordingly, we find that McLaughlin's lack of counsel did not cause his default and McLaughlin's claim is procedurally defaulted.[10]

III.    CONCLUSION

For the foregoing reasons, we will affirm the District Court's order.

---

[10]    The Magistrate Judge also questioned whether McLaughlin had exhausted his claim and that issue was included in granting McLaughlin a Certificate of Appealability. But because McLaughlin procedurally defaulted his claim, his claim is technically exhausted, and we need not analyze exhaustion further. See Woodford v. Ngo, 548 U.S. 81, 92–93 (2006); see also Gray v. Netherland, 518 U.S. 152, 161–62 (1996); Coleman, 501 U.S. at 732.